# THE PEOPLE OF THE STATE, &c., *v.* JAMES M. RAYMOND.

*Quo Warranto—Constitution—City of New York—Tax Commissioners.*

This was an action in the nature of a quo warranto, to determine the validity of the law relating to the appointment of Tax Commissioners within and for the city and county of New York.

The Court held that the office of Commissioner of Taxes, in and for the city and county of New York is a city or county office, and that the functions of such office existed, and were substantially exercised by ward assessors at the time of the adoption of the constitution of 1846, and therefore that the act of the Legislature, creating the Board of Tax Commissioners, and vesting their appointment in the Governor, with the advice of the Senate, is, to that extent, unconstitutional.

THIS is an action in the nature of a quo warranto, brought against James M. Raymond, a Commissioner of Taxes and Assessments in the city of New York, an office to which he was appointed by the Governor of the State of New York, by and with the advice and consent of the Senate, under and in pursuance of the provisions of an act of the Legislature of the State of New York, passed April 17, 1867 (ch. 410, Laws of 1867). The only question presented for the consideration of the Court is the constitutionality of the act referred to.

The Judge at Special Term, in New York, decided that the act referred to was valid, and affirmed the right of the Defendant to the office.

This judgment was reversed at General Term, and a new trial ordered, and from this order the present appeal is taken.

*M. B. Champlin,* Attorney-General, and *Henry H. Anderson,* for the Respondents.

*William F. Allen, Waldo Hutchings,* and *John H. Reynolds,* for the Appellant.

HUNT, CH.J.—I am for affirmance. The law of 1867 simply

changes the mode of appointment of " Commissioners of Taxes and Assessments of the city and county of New York," authorizing the Governor and Senate to make the appointment. The act of 1859 (p. 678) authorized the Comptroller of the city of New York to make the appointment of these Commissioners. By the act of 1857 (p. 497, vol. 2) the Supervisors of the county of New York were directed to elect these Commissioners by ballot. Their general and important duty, under each act, was to regulate the assessable property, as is done by assessors in the country. There is a difference in the detail of the duties, but their general character is the same under each act. In 1850 (p. 188) it was enacted that there should be elected, by the electors of the ward, two assessors for each ward, and the Supervisors were directed to appoint three Tax Commissioners, whose duties were prescribed in §§ 15 to 22, being generally to revise, review, and correct the assessment rolls, and deliver the same to the Supervisors. Previously to this time the duties of assessors were substantially as prescribed in the Revised Statutes, the act of 1830 providing for a meeting of all the ward assessors, for the purpose of equalizing the taxes. In effect, the Legislature have divided the duties of assessors as they existed in 1846, and have given an important part of them to Commissioners of Taxes and Assessments. The assessors are elected by the city and county authorities, or divisions of them, and under art. 10, § 2, these Commissioners must be elected in the same manner (People *v.* Draper, 15 N. Y. 552; Pinckney, 32 N. Y. 381; Warner, 2 Denio, 272). The present law is in violation of this principle.

GROVER, J.—This is an action in the nature of a quo warranto, brought by the Attorney-General, to determine the title of the Appellant to the office of Commissioner of Taxes and Assessments in the city and county of New York. The Appellant was duly appointed to such office by the Governor, with the consent of the Senate, pursuant to section 1, chap. 410, Laws of 1867 (p. 981), and has duly qualified according to the requirements of said act. His right to the office, therefore, depends upon the constitution-

ality of said act.  It is claimed by the counsel of the Respondent that the act in question is in conflict with section two, article ten, of the constitution, and, therefore, void.  That section provides that all county officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties, or appointed by the Board of Supervisors, or other county authorities, as the Legislature shall direct.  All city, town, and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns, or villages, or of some division thereof, or appointed by such authorities thereof as the Legislature shall designate for that purpose.  All other officers, whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed as the Legislature may direct.  There is no question but that the office in question is exclusively a city office.  To determine whether the act in question is constitutional, so far as the power of appointment is thereby vested in the Governor, with the consent of the Senate, it is necessary to determine whether the office in substance existed at the time of the adoption of the present constitution, and if found not so existing, then the further question whether city, town, and county offices, subsequently created, may be filled in any mode prescribed by the Legislature.  To determine the first question, it is necessary to ascertain the functions and duties of the office in question.  These, upon examining the act in question, the act of 1859, page 678, the acts of 1857 and 1850, and the previous legislation, will be found to consist of power to appoint deputies, clerks, &c., who, together with the officers in question, by performing the various duties of their respective offices, are to make an assessment of all the property liable to taxation in the city, for municipal and State purposes; to correct the rolls of such assessments, and to equalize the same, and to preserve such rolls in an office to be kept by them, and deliver the same to those whose duty it is to levy the taxes upon such rolls, authorized upon the property of the city.  It is necessary,

also, to inquire whether the like functions were performed by any officers at the time of the adoption of the existing constitution. This all know must have been so, as taxation upon property is not wholly of modern origin, but has existed at intervals for State purposes, and at all times for municipal purposes, since the existence of the State; and there must necessarily have been at all times some mode by which a valuation of the property liable to taxation was made by public authority, as a basis upon which taxes were apportioned among its owners. An examination of the statutes in force at the adoption of the constitution, will show that such valuation was then made by assessors chosen by the electors of the respective wards of the city, two in each ward; that these ward assessors were required to assess all the taxable property in their respective wards, and when this was completed, they were all required to meet together as a board, and when so met, to compare, equalize, and correct all the assessment rolls of the city, and when completed the assessors were to deliver the same to those whose duty it was to apportion the taxes required to be collected upon the basis of such valuation.

Thus it appears that precisely the same essential functions were performed in making, equalizing, correcting, and delivering the assessment rolls by the ward asssessors, at the time of the adoption of the constitution, that were contemplated to be performed by the Commissioners of Taxes and Assessments by the act in question. That, although the names of the officers and their mode of appointment have been changed, the result to be accomplished by the one is identical with that of the other. But it is argued on the part of the Appellant, that additional powers have been conferred and additional duties imposed upon the commissioners. This is true, they are to keep an office during the entire year, in which the rolls are to be kept for inspection; they are to procure and preserve maps of the lots in the city; to keep a record of the building permits; to them power is given to insert in the rolls property which has been omitted, and to do some other acts, none of which were required of the assessors, and which they were not authorized to do. But an examination of these new duties and

powers will show that they are all such as are calculated to facili-
tate, and the better enable them to perform, the same essential
duty performed by the assessors—that is, of perfecting a valuation
of the property as a basis of taxation. Such additional facilities
in the performance of the same duties, surely cannot make them
new officers in the sense of the constitution.

If they can thus be made new, the section of the constitution
above quoted may readily be made a mere nullity. I am far
from conceding that it would be competent for the Legislature to
take from the city all control over the assessment of the property
of the city for purposes of taxation, and vest this power in the
central authority, by conferring powers upon the officers or
boards, upon which they conferred it over other subjects, and im-
posing duties upon them entirely foreign to those of making
the assessment. The plain intention of the section of the con-
stitution in question, was to preserve to localities the control of
the official functions of which they were then possessed, and this
control was carefully preserved, consistent with the power of the
Legislature to make needful changes, by restricting the power of
appointment of other officers to perform the same functions to the
people, or some authority of the locality. Any other construc-
tion would render the section in question, when applied to the
cities of the State, substantially nugatory. It is not enough that
the name of the officer is changed, or the powers enlarged, to
authorize the Legislature to confer upon the Governor the appoint-
ment of officers to discharge the duties performed by city officers
at the adoption of the constitution.

This accords with the reasoning of the prevailing opinion in
The People v. Draper (15 N. Y. 532), and also with that of other
cases, although the precise point has never been decided by this
Court. It is insisted that the assessors elected by the wards of
the city were not city officers. It will be seen, by the act of
1830, that they not only assessed the property of their respective
wards, but all were required to meet as a board, and act upon and
perfect all the rolls of the city. This clearly made them city
officers, within the meaning of the constitution. The acts of

1859, 1857, and 1850, gave the power of appointment of the Commissioners to some local authority of the city, and thus preserved the local control over the subject. The act of 1867 vests the appointment in the Governor and Senate, and thus deprives the city of all local control of the assessment of the property of the people for the purposes of taxation. It thus deprives the people of the city of a right secured to them by the constitution, and is, therefore, void. This renders a discussion of the question— whether the Legislature can provide for the appointment to a city office, created after the adoption of the constitution, in any mode deemed best for the public interest—unnecessary, for the reason that the office in question was not so created within the meaning of the constitution. I will simply remark, that this question was decided in The People v. Pinckney et al. (32 N. Y. 377), in which it was held that this power was possessed by the Legislature. The question was not at all discussed, but it was assumed that it had been decided in the same way in The People v. Draper (supra). A slight examination will show that there was no such question decided in the latter case. It was there held that the officers in question were not city officers in any constitutional sense, but officers of the district created by the act: consequently, this question was not at all in the case; and all that was said in relation to it was entirely obiter. Whether the question, under the circumstances, would be considered open in this Court, cannot now be determined.

The judgment appealed from must be affirmed.