FRANCIS E. JOHNSON, AS ADMINISTRATOR, ETC., OF CORNE-LIUS S. JOHNSON, RESPONDENT, *v.* ANDROS B. STONE AND WILLIAM L. DONE, APPELLANTS.

*Lunatic — right of his committee to rescind a disadvantageous purchase made by him — power of the court to enter a judgment in conformity with the equitable rights of the defendants as between each other.*

On January 28, 1881, the defendants sold to one Johnson, a lunatic, 5,000 shares of the stock of a mining company in consideration of the sum of $50,000 paid to them by him. The defendants did not then know that Johnson was a lunatic, and the sale was made in the ordinary course of business and with no attempt at deception, but the defendants did know that the stock had no market value and that the price paid therefor was greatly in excess of its true value. On February 25, 1881, the original plaintiff in this action was appointed the committee of Johnson. On or about March first the plaintiff offered to return the certificates for the shares of the mining stock to the defendants, and demanded the repayment of the $50,000. The defendants refused to repay it.

*Held,* that the plaintiff could maintain an action against them to recover the amount so paid.

It appeared upon the trial that the defendants owned the stock sold in unequal proportions, one owning one-fourth and the other three-fourths thereof, and that the money received was divided in that proportion. The judgment

adjudged that the defendants should refund the money in the same proportions in which they had received it.

*Held*, that the judgment was a proper one for a court of equity to render, but that if the defendants objected thereto it should be so amended as to make it a joint judgment for the full amount against both.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action at a Special Term.

*G. W. Dillaway*, for the appellants.

*Francis C. Reed*, for the respondent.

DAVIS, P. J.:

This action was commenced by Francis E. Johnson, as committee of the personal estate of Cornelius Johnson, who had been declared a lunatic. Subsequently Cornelius Johnson died and Francis E. Johnson was appointed administrator of his estate, and the title of the plaintiff in the action was changed accordingly. In the month of February, 1881, Cornelius Johnson was, in proceedings duly had in this court, found by the jury to be a lunatic and incompetent to manage himself or his affairs; and to have been such lunatic on and since the 16th day of December, 1880. The inquisition in the matter was confirmed by this court on or about the 23d day of February, 1881, and Francis E. Johnson was appointed committee of the person and estate of said Cornelius, and said Francis duly qualified as such committee.

On the 28th of January, 1881, the defendants, in consideration of the sum of $50,000, then paid by said lunatic, sold and transferred to him 5,000 shares of capital stock in a mining company, known as the Jones' Bonanza Mining Company, at the rate of ten dollars per share. The defendants did not then know that said Johnson was a lunatic, and the sale was made in the ordinary course of business and with no attempt at deception. The complaint alleges that, as the said defendants then well knew, the said alleged mining stock had no market value; that the sum obtained from said lunatic therefor was greatly in excess of its intrinsic or true value; that it was then worth little or nothing.

These allegations are not denied by the answer. The stock so purchased came into the hands of the committee of the lunatic, who, on or about the 1st day of March, 1881, offered to the defendants

the certificates for said shares, and to return and restore all that had been received by the lunatic for said $50,000 paid to them by him; and demanded that they pay and deliver over to said committee the sum of $50,000 so paid to them by the lunatic. The defendants refused to receive said stock and to return said money, and thereupon this action was brought.

In the further progress of the action several questions were by the court sent down for trial by a jury, in answer to which the jury found that Cornelius S. Johnson was, at the time of the purchase and transfer to him of the 5,000 shares of stock mentioned in the complaint, and the payment of $50,000 therefor to the defendants, a lunatic, and incompetent to manage his affairs. On the subsequent trial before the court at Special Term the questions and answers of the jury were received by the court in evidence and made a part of its findings. The court also found that the alleged purchase and sale of the stock, and the payment of $50,000, were made as averred in the complaint, and that the defendants transferred and delivered the said stock, and received the said $50,000, the said Johnson being at that time a lunatic and incompetent by reason of lunacy to manage his own affairs. It also found that the defendants at the time of the sale owned the stock sold in unequal proportions, the defendant Stone owning three-fourths and the defendant Done one-fourth thereof, and that the moneys paid by Johnson, after their receipt were divided between the defendants in that proportion. It also found that the subsequent tender and demand were made by the committee, as alleged in the complaint, and the refusal on the part of the defendants to receive the stock and repay the money. And at the request of the defendants the court further found that the contract of sale, and the payment of the money for the stock, were made in the ordinary course of business with no attempt at deception, and without notice or knowledge on the part of the defendants that Johnson was a lunatic and incompetent to manage his affairs.

No part of the evidence taken on the trial before the jury, or of the oral or other evidence (except the verdict of the jury), taken on the trial at Special Term is included in the case. We are bound, therefore, to assume that the findings of fact were all supported by sufficient evidence on both of those trials.

The principal question presented on the appeal is as to the right of the plaintiff to maintain this action without proving that the defendants were guilty of fraud and deceit in making a sale to the lunatic and receiving his money. This is based upon the idea that the action is in form and substance *ex delicto*. The complaint undoubtedly contains some allegations which would be entirely proper in an action at law for fraud and deceit. But it was obviously framed, not with a view to maintain an action of that character, but one in equity for the purpose of avoiding the alleged sale and recovering back the consideration upon a return of the stock; and in that view the allegations which are supposed to charge fraud are not improper, and do not, as we think, require any further proof than such as would call upon a court of equity to adjudge the transaction to have been unlawful and in that sense fraudulent, and, therefore, to set the same aside and require the restoration of the consideration paid. The complaint does allege that the act of the defendants was wrongful and unlawful, but it nowhere alleges that those acts were done *with intent to cheat or deceive the purchaser*. Fraud is not, therefore, the *gravamen* of the action, and inasmuch as dealings of this character with a lunatic are in equity regarded as wrong and unlawful to such an extent as to justify their rescission and the restoration of the parties to their previous condition, there are not, we think, any such allegations in the complaint as necessarily to make this action one at law for fraud and deceit. The findings, therefore, by the court, that there was no deception practiced by the defendants in making the sale, and that they did not know of the insanity of the person with whom they were dealing is not sufficient, as we think, to entitle the defendants to a dismissal of the complaint. A sale to a lunatic is void when the fact of lunacy existing at the time of the sale is established, whether the defendant had or had not knowledge of its existence. (*Van Deusen* v. *Sweet*, 51 N. Y., 378; *Hicks* v. *Marshall*, 8 Hun, 327; *Riggs* v. *American Tract Society*, 84 N. Y., 330; *Mutual Life Insurance Co.* v. *Hunt*, 79 id., 541.) This rule is subject to the qualification that where a sale is for the benefit of the lunatic or his estate, and is made in good faith, without knowledge of his condition, and the party who has made it cannot be put *in statu quo*, a court of equity will not invalidate the transaction. But

these facts, in order to confirm the contract, must be alleged and proved by the defendants. The exception has no application to this case, because it is clear that the sale was not a transaction for the benefit of the lunatic or his estate ; and it is equally clear that, at the time of the tender of the stock and demand of the money, the defendants, by receiving the same back and refunding the money, would have been placed *in statu quo*. The stock is not shown at any time to have had any market value. There is no evidence to show that it had depreciated, or that it could not be sold at its real value, as well in March as in the previous February. After the lunacy had been adjudged to have existed at the time of the sale, that fact was made known to the defendants when the committee came with the stock and offered to restore it, and receive back the consideration paid. The refusal to take the stock and refund the money was a wrong which, in equity, charges the defendants with all the liability resulting from an unlawful withholding from the committee of a portion of the lunatic's estate. We are able to see no facts found or proved in the case which relieve the defendants from the consequences of the general rule. But it is insisted that separate causes of action against the defendants were shown, and that therefore the complaint should be dismissed, as no joint judgment could be rendered against the defendants. That, however, we think, is a mistaken view of the case. The sale is shown to have been a single one of 5,000 shares of the stock. It was made by the defendant Done, acting for himself and the defendant Stone, and there is nothing to show any separate individual transaction between either of those parties and the lunatic. Upon the findings in the case, which, as before said we must assume to have been supported by evidence, the plaintiffs were entitled, if they so demanded, to have had a joint judgment against both of the defendants to enforce a repayment of the money. But it appeared in the case that although the sale was a single transaction made for the joint benefit of the defendants, yet in fact the stock sold was owned by them in the proportions of one-fourth by Done and three-fourths by Stone, and the money received was, after its payment to Done by the lunatic, divided in like proportions. The court, therefore, for the purpose of administering equity as between these parties, proceeded to adjudge their

liability to refund the money in precisely the proportions in which they received it. Of course this is an equitable disposition of their rights, and there is no just cause for either of the defendants to complain. If the recovery of such a judgment be erroneous, the only legitimate result would be a modification of the judgment by us, so that it should be in form joint against both, leaving them to adjust as between themselves their respective equitable obligations and duties. But we see no good reason why a court of equity might not proceed to render judgment precisely as has been done, so as to enforce the separate liabilities against the defendants individually for the amount of moneys received by them respectively, and relieve each from any obligation to pay any part of it which has not come to his own hands. (See *Armitage.* v. *Pulver*, 37 N. Y., 499.) That case, and the rules therein discussed and laid down, seem to be quite sufficient to uphold this form of procedure; for this may be treated as the learned judge in that case treated it, as in its nature an equitable action to ascertain and determine so far as relates to this branch of it the sums which the several defendants are bound to contribute.

We are not, therefore, inclined to interfere with the judgment on the ground of this objection, except so far as to hold that if the defendants insist that the judgment should be joint, and not several as rendered, and consent to a modification to that effect such modification may be made, in which case the judgment should be modified to that extent, and affirmed as modified; otherwise the judgment must be affirmed, and in either case with costs to the respondents.

DANIELS, J., concurred.

Judgment affirmed, unless appellants consent by stipulation that the judgment be joint and not several as rendered, in which case the judgment modified to that extent and affirmed as modified; but in either case with costs to the respondent.