BLANDY (LEE v.). See Case No. 8,182.

---

# Case No. 1,531.

## BLANE v. DRUMMOND.

[1 Brock. 62.] [1]

Circuit Court, D. Virginia. Nov. Term, 1803.

CONFLICT OF LAWS — ACTION BY FOREIGN ASSIGNEE IN BANKRUPTCY — LEX FORI — ASSIGNMENT OF LEGAL TITLE.

The assignees of a bankrupt in England, cannot maintain an action at law in their own name against a debtor of the bankrupt in Virginia, and the action is only maintainable in the

---

[1] [Reported by John W. Brockenbrough, Esq.]

name of the bankrupt himself. Though the right to personal property may be regulated by the laws of the domicil, as in the case of the bankrupt laws of England, and though the equitable rights of the assignees acquired under those laws will be respected in our courts, yet the right of action must be regulated by the law of the forum in which the suit is brought: and the transfer of a bankrupt's effects in England being an assignment merely by operation of law, and not by the act of the party, is not such an assignment of the legal title to the assignees as will enable them to maintain an action in their own name in the courts of Virginia.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015; Cuykendall v. Miles, 10 Fed. 344.]

[See Perry v. Barry, Case No. 11,000; Harrison v. Sterry, 5 Cranch (9 U. S.) 289; Ogden v. Saunders, 12 Wheat. (25 U. S.) 213; Booth v. Clark, 17 How. (58 U. S.) 322; Hunt v. Jackson, Case No. 6,893.]

At law. This was an action of debt, on a bond with collateral condition, brought by Thomas Blane, the obligee, in his own name, against William Drummond, one of the obligors. The defendant pleaded specially, that the action ought not to be maintained against him, "because he saith that the said plaintiff is a British subject, and that after the date of the said writing obligatory in the declaration mentioned, and before the institution of this suit," "at the city of London, &c., where the said plaintiff then resided, he, the said plaintiff, became a bankrupt within the meaning and purview of the several statutes of the parliament of Great Britain made against bankrupts; by which said statutes it is in substance declared, that all the estate and effects, rights and credits, of any person becoming bankrupt, &c. (in whatever country the estate and effects, rights and credits aforesaid, may be situate and exist,) shall be assigned to, vested in, and belong to assignees, to be chosen by the creditors of such bankrupt, for the uses in those statutes mentioned: and the defendant further says, that in consequence of the bankruptcy aforesaid, of the said plaintiff, all the estate and effects of the plaintiff, whatsoever and wheresoever, were assigned, according to the said statutes to Samuel Brandram, Thomas Maltby, and George Glenny, who are also British subjects, and in whom, by reason of the premises, all the estate and effects, rights and credits, whatsoever and wheresoever, which were of the plaintiff at the time of the bankruptcy aforesaid, became vested in the said assignees, for the benefit of the creditors of the said plaintiff; which said assignees, by the statutes aforesaid, have the exclusive right to sue for and recover, all the debts, rights, credits, and effects, which were of the said plaintiff, at the time of the bankruptcy aforesaid; and, consequently, that they the said assignees have the exclusive right to sue for and recover the debt in the declaration mentioned: and this the defendant is ready to verify, &c."

In his replication to this plea, the plain-

tiff insisted that, "by any thing in the said plea alleged he ought not to be barred from having his said action, because he saith that Samuel Brandram, Thomas Maltby, and George Glenny, the said assignees, &c.," did,. "by their letter of attorney duly sealed and executed, constitute and appoint John Hamilton, now of Norfolk, a British subject, and consul to his Britannic majesty, their lawful attorney, to ask, sue for, and demand in their name, or in the name of the said Thomas Blane, all debts, dues, and demands, originally owing and payable to the said Blane, from any person or persons resident within the United States of America; and the plaintiff saith that his said action was begun and is prosecuted with the consent and approbation of his said assignees, and their said attorney, and is carried on for the benefit of his creditors, under the direction of his said assignees and their attorney; and this he is ready to verify, &c."

The defendant demurred generally to the plaintiff's replication; and the plaintiff joined in demurrer, and upon this demurrer the chief justice delivered the following opinion:

MARSHALL, Circuit Justice. The only question in this case is, whether an action at law can be maintained in this court in the name of a person who has become a bankrupt in a foreign country? In support of the action it is contended, that bankrupt laws have no positive extra-territorial force, and that although other nations will notice the rights which are vested by them, yet they cannot give a form of action in a foreign country, nor entitle a person to maintain an action, who by the laws of that country could not maintain it. From this position it is inferred, that although a foreign court will respect the right of the assignees to money due a bankrupt, yet that money must be sued for according to the forms of the place where the action is brought. For the defendant, it is contended, that the right to personal things is regulated by the law of the domicil, and not by the law of the place where they happen to be found, and, consequently, that the right to the effects of a bankrupt, wherever they may be, unless the law of the place shall otherwise direct, is vested in those to whom the law of his residence gives it. It is also contended, that an action can only be maintained by him who has the right, and that, consequently, no action can be maintained in the name of the bankrupt. The law of foreign nations, it is said, constitutes a part of the law of every nation, so far as to govern foreign contracts and foreign rights.

In examining this proposition, that only the person having the right can maintain an action, it is necessary to be more definite in the terms employed. If it is intended to say, that only the person having the legal right can maintain an action at law, the position is perhaps correct; but if it is intended to say, that the person not having the equita-

ble right to retain the money sued for, cannot maintain an action at law, the truth of the proposition cannot be admitted. The common case of a bond not legally assignable, sued for in the name of the obligee for the use of his assignee, disproves it.[2] The proposition, too, that the laws of foreign nations become a part of the law of every civilized nation, is true to a certain extent. It is true, also, that, generally speaking, the rights to personalties are determined by the law of residence, and not by the law of the place where the property is found.[3] The right to claim the effects of a deceased person in foreign countries is generally secured by treaties, but the principle would probably be adopted independent of compact. Whether the same principle extends to rights under bankrupt laws, seems not to have been so well settled. But the person having this right, according to the laws of a foreign country, sues in conformity with the principles of jurisprudence established in the country where the suit is brought. If according to those principles any person having the right may maintain an action, then it is sufficient to show that the person suing is entitled to the thing claimed, by the laws of the domicil. But if those principles oppose any obstacle to the person suing on his original right, he must give himself a character which will authorise him to maintain his action. Thus the hoeres factus or natus of a Frenchman, claiming personal property in England, has a complete title, and most probably in France, where proceedings are according to the forms of the civil law, might maintain an action for the property of his testator or intestate. But the forms of jurisprudence established in England require, if he would proceed at common law, that he should qualify himself according to the requisites of the common law to maintain his action. He must therefore take out letters of administration in England. His right to the personal estate gives him a right

---

[2] By the law of Virginia, as it exists at the present day, assignments of all bonds, bills, and promissory notes, and other writings obligatory, are valid; and an assignee of any such may maintain an action upon it in his own name, which the original obligee or payee might have brought; but shall allow all just discounts, not only against himself, but against the assignor, before notice of the assignment was given to the defendant. 1 Rev. Code 1819, p. 484, § 5. In construing this section, the court of appeals of Virginia have decided that the statute does not transfer the legal title to the debt to the assignee, but simply adds the capacity to sue in his own name to the equitable right which he had independently of the statute: Hence, notwithstanding the assignment, an action may still be maintained in the name of the original obligee for the benefit of the assignee, upon the strength of the legal title remaining in the obligee; the statute upon this construction giving a new remedy without abolishing the old. Garland v. Richeson, 4 Rand. [Va.] 266.

[3] But in Harrison v. Sterry, 5 Cranch [9 U. S.] 289, 2 Pet. Cond. R. 260, Chief Justice Marshall said, that in the administration of the estate of a deceased person, the assets are always distributed according to the dignity of the debt as regulated by the law of the country where the representative of the deceased acts, and from which he derives his power; not by the law of the country where the contract was made. The law of the place where the contract is made is, generally speaking, the law of the contract; that is, it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic, and is rather a personal privilege dependent on the law of the place where the property lies, and where the court sits which is to decide the cause. The principle here laid down is cited and approved by the supreme court in Smith v. Union Bank of Georgetown, 5 Pet. [30 U. S.] 518. The question, what law shall govern the distribution of an intestate's effects among his next of kin, when there shall be a conflict between the law of the domicil and that of the situs, did not arise in either of the above cases; and in the last of them, Johnson, J., who delivered the opinion of the court, said it would be time enough to decide that question when it arose. This question did arise in Harvey v. Richards [Case No. 6,184]; and Story, J., after a laborious examination of authorities, held it to be very clear that the lex domicilii must prevail. See, also, Shultz v. Pulver, 3 Paige, 182, and 2 Rob. Pr 126, 127. See, also, opinion of the court delivered by Mr. Justice Story. in Harrison v. Nixon, 9 Pet. [34 U. S.] 503, 504. In that case the testator was born in Pennsylvania, and was a merchant in Philadelphia at the breaking out of the Revolutionary War, when he went to England, and resided in Old Street, London. After the war, he came several times to the United States, and made his will in Philadelphia, in 1791, which he deposited in the old Bank of North America. By this will he gave the bulk of his property, real and personal, to his "heir at law." He died in London, in 1824. Without determining the place of testator's domicil,— the court remanding the cause to have amendments made to the bill, averring not only the citizenship, but the domicil of the testator, at the date of the will, at the time of his death, and during the intermediate periods, so that the elements of a full decision might be brought before the court,—Mr. Justice Story said that the court were called upon to construe this will, "and in an especial manner to ascertain who is meant by the words 'heir at law,' in the leading bequest in the will. The language of wills is not of universal interpretation, having the same precise import in all countries and under all circumstances. They are supposed to speak the sense of the testator, according to the received laws or usages of the country where he is domiciled, by a sort of tacit reference; unless there is something in the language which repels or controls such a conclusion. In regard to personalty in an especial manner, the law of the place of the testator's domicil governs in the distribution thereof, unless it is manifest that the testator had the laws of some other country in his own view."

With respect to real property, it is an acknowledged principle of law that the title to, and disposition of it, are exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another. Kerr v. Moon, 9 Wheat. [22 U. S.] 565; McCormick v. Sullivant, 10 Wheat. [23 U. S.] 192. See, also [Robinson v. Campbell] 3 Wheat. [16 U. S.] 212; [Clark v. Graham] 6 Wheat. [19 U. S.] 577; 2 Gall. 105; [Society, etc., v. Wheeler, Case No. 13,156; Darby v. Mayer] 10 Wheat. [23 U. S.] 469; [Jackson v. Chew] 12 Wheat. [25 U. S.] 153.

to administer, but does not give him a right of action before administration granted. The right to personal property then may be regulated by the laws of the domicil; but the right of action must be regulated by the law of the court where that action is brought.[4] The question then is, whether the operation of a bankrupt law can be such as to transfer to the assignees the legal title or the right of action in debts due in a foreign country, or to extinguish the legal title or right of action of the bankrupt? If it affects the one or the other of these objects, the present action cannot be maintained.

The general proposition, that the laws of one nation may give a form of action in the courts of another, or authorise a person to maintain an action who could not maintain it by the priciples of that forum to which he has applied, has been already denied. The plainest principles of national law refute such an idea, and it would be time utterly misspent further to demonstrate its error. A debt, therefore, which, by the laws of Virginia is not assignable, cannot be assigned by the laws of any other country, so as to enable the assignee to sue in this. The right of property may be changed by those laws, but the right of action cannot be given. Debts due by open account, therefore, cannot be sued for in the name of the assignees. Yet in the country of the bankrupt, the assignees sue in their own names for debts, in themselves unassignable by an act of the party. This follows from the principle, that suits must be prosecuted by virtue of the law of the country where they are instituted, and not of that where the claimant resides. This being true, the assignment, as well as the nature of the debt sued for, must conform to that law. Not only must the debt be assignable, but it must be assigned according to law. Bonds by the laws of Virginia are assignable, but they can only be assigned by the act of the party himself. The declaration must state a legal assignment in order to give the assignee an action. A declaration, stating an assignment by virtue of the law of a foreign country, would not be good, for that would be equally effectual in the case of an unassignable debt. It then only remains to inquire whether, if the assignees in this case had declared on an assignment by the bankrupt, they could have given in evidence the assignment made in conformity with the bankrupt law. This would be, by legal inference, totally to change the nature of the fact itself; an operation which would require very plain legal

principles for its support. The counsel for the defendant has cited a principle of which I supposed at the time he designed to make this use. It is, that every subject is intended to give his assent to an act of parliament. He did not, however, so apply it, nor could it be properly so applied, for this plain reason, that the assent follows the nature of the act, and is only an admission that it shall be an act of parliament, not that it is in truth his personal act; nor can such an assent give the act an extra-territorial force, or change the requisites of a law of a foreign country respecting assignments. The admission, then, of one of the counsel, that an action at law is not maintainable in the name of the assignees, was correctly made; and it remains to inquire whether such an assignment, without transferring a right of action to the assignees, has extinguished that of the bankrupt. Upon principle, I cannot perceive any solid ground on which the distinction taken can be maintained, or on which such extinguishment is to be supported. To deprive a man, having a right to sue in a foreign country, of that right, is giving to the law which would effect this object an extra-territorial operation, which, I believe, has never been admitted. In this case it is the less allowable, because it would not be to conform to the intention of the law itself. That intention is one entire thing. The law takes the right out of the bankrupt, for the purpose of transferring it to his assignees; and unless this transfer can be made, the intention of the law cannot be effected. To give a foreign legislative act an extra-territorial operation which would defeat the intention of the act, would be peculiarly improper. The whole argument in favour of this proposition, so far as it is merely an argument on principle, is, that only he who has the right to the thing, can have the right of action; but this is answered by saying, that the rule is not universally true, because nothing is more frequent than suits at law in the name of a person, whom equity will compel to deliver over the property to another. The common case of a suit in the name of the assignor of an unassignable paper, is sufficient evidence of this position. The right of action, distinct in different courts in the same country, is of course distinct in different countries. The defendant attempts to get over this common case, by saying that the common law takes no notice of such assignments, but the counsel does not recollect that assignments under the bankrupt law must be equally unnoticed by the common law courts of a foreign country, or the assignees would be permitted to sue in that foreign country. These laws are said to be noticed, and the rights they give protected, in pursuance of that courtesy which one nation pays to the institutions of another. But this courtesy extends only to the substantial rights of the parties, and not to the forms

---

[4] The law of a place where a contract is made, governs as to the validity of it, its nature and construction, but the remedy on such contract must be pursued according to the law of the place where the suit is brought. Van Reimsdyk v. Kane [Case No. 16,871]. See, also, Kerr v. Moon, 9 Wheat. [22 U. S.] above cited.

of action, and would display itself very ungraciously indeed, in denying the foreigner an action in any form. The defendant states the bankrupt law to operate by way of contract between the bankrupt and his assignees. This is very probably correct; but a contract, not being an actual assignment, cannot divest the contracting party of the legal right of action which was vested in him. The situation of a right without a remedy, is so unusual, that the counsel for the defendant has thought it necessary to state several cases, showing that it may exist. The cases put are those of a release of all actions, of an alien, of an outlaw, and of a person excommunicated. That it is within the compass of the legislative power of any country to deprive a person having a right, of a particular remedy, or of any remedy whatever within its own territory, is not questioned. But the cases put are understood to apply to that before the court, very differently from the manner in which they have been applied. In the cases put, the law operates according to its intention. In the case at bar, the law would not so operate. But what is of more importance, is, that in the cases put, so far as they could occur in a foreign country, the party might sue in his own name. It is a settled principle, that disabilities to sue affect the party only in the courts of the country imposing them. They do not, like natural defects, adhere to the person, and pass with it to distant regions, but fall off when he travels out of the jurisdiction which has imposed them. I believe no man doubts that a person excommunicated, or outlawed in a foreign country, might maintain a personal action in this. The argument, that the act operates by way of estoppel, cannot be admitted, without agreeing that a foreign law has a positive operation, and at the same time giving it an operation contrary to its intention. Upon principle, then, I should feel not much difficulty in saying that the suit is maintainable in the name of the bankrupt. The cases cited do not change this opinion. They only support principles which have already been considered, and which do not defeat the action. The only circumstance which excited doubt in my mind, was the practice of suing in chancery in the name of the assignees, in cases of foreign bankruptcy. I thought it strange, that no case should have occurred, where a suit was instituted in the name of the bankrupt himself, if such a suit was thought to be maintainable. I still think so. But this is accounted for, perhaps, by a general disinclination to use the name of the bankrupt, by the authority of the chancellor over bankrupt cases, and by the point never having been doubted.

Demurrer to the plaintiff's replication overruled, and judgment for the plaintiff.

---

BLANFORD (CROSS v.). See Case No. 3,429.