## KEMP, Tutrix *v.* NICHOLS.

No action can be maintained against a party for aiding a debtor in removing beyond the limits of the State slaves subject to a judicial mortgage in favor of plaintiff, where the evidence shows that the debtor possessed no other property, and that prior mortgages recorded against the debtor exceed the value of the slaves. *Per Curiam:* The plaintiff has sustained no injury, and can have no action; or if it be conceded that the plaintiff's *jus in re*, resulting from the general mortgage, is sufficient to authorize the action, the damages must be merely nominal.

APPEAL from the District Court of Concordia, *Farrar*, J. *Thomas* and *Snyder*, for the appellant. *Stacy* and *Sparrow*, for the defendant. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff is a judgment creditor of *Charles N. Rowley*. The judgment having been duly recorded operated as a general mortgage on the property of *Rowley*. The petition alleges that certain slaves therein named owned by *Rowley* and in his possession, though covered for fraudulent purposes under the name of *Jacob D. Lansing*, of the value of $10,000, were removed from the State to parts unknown. It charges that the defendant, fully aware of the mortgage rights of the plaintiff upon the slaves and intending to defeat them, colluded with *Rowley*, and others to the petitioner unknown, and fraudulently aided in removing the slaves, he, the defendant, well knowing the utter insolvency of *Rowley*, and thus accomplishing their purpose of defeating the mortgage. It further states that, after exhausting all the property of *Rowley* known to the petitioner, a large balance of the judgment remains due and unpaid, and that she has sustained damage to the amount of the value of the slaves, by the illegal,

unjust, and fraudulent acts of the defendant in the premises. She prays judgment for $10,000, the amount of the alleged damage, and for general relief.

The defence to this action is, an alleged *bonâ fide* purchase of the slaves by the defendant from *Charles N. Rowley*, as the attorney in fact of *Samuel Rowley*, by act under private signature, dated the 31st July, 1847, for a just price, he, the purchaser, believing that the slaves belonged to said *Samuel Rowley.* There was a verdict for the defendant, and judgment having been rendered in conformity therewith, the plaintiff has appealed.

In addition to the general defence resting on the *bonâ fides* and the validity of the purchase of the slaves by the defendant, a point was made and has been argued before us, that there were other judicial mortgages against *Rowley's* property having precedence over that of the plaintiff, and that the plaintiff has no sufficient interest in the slaves to support the present action for damages against the defendant. It appears that the judicial mortgages recorded against *Rowley* exceed the sum alleged to be the value of the slaves; the petition states that his property has been exhausted, and it follows that these slaves, eight in number, alone remain to satisfy the prior judgments against him. The judicial mortgage gave a right to the plaintiff over the property of the debtor for the security of her debt, with the power of having it seized and sold in default of payment. The existence of a judicial mortgage on property does not, in any sense, affect the validity of the disposal of it by a contract of sale. The owner may sell it, and the purchaser takes it subject to the mortgage. It may be sold under execution, the mortgage still subsisting in the hands of the purchaser.

The injury complained of by the plaintiff is the collusion of the defendant with *Rowley* and others, in removing the slaves from the State and thereby defeating her mortgage. She having neither the ownership nor the possession of the slaves, if her action be based upon the 2294th article of the Code, which provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair, it is then incumbent on us to ascertain what damage the plaintiff has suffered by the acts of the defendant in thus aiding in removing the slaves. The petition assumes that the measure of the responsibility of the defendant is the value of the slaves. Let us suppose then that the slaves are returned, and sold under execution, and the proceeds in court for distribution. The plaintiff can have no portion of them; they must be applied to the satisfaction of the previous judgments, and thus it seems to us that the plaintiff stands before us without interest to maintain the present suit. She has sustained no injury, and can have no action. Or, if it he conceded that the plaintiff's *jus in re*, resulting from the general mortgage, is sufficient to authorize the action, the damages must be merely nominal, and below in amount the jurisdiction of the court of the first instance.

The right of the plaintiff to maintain this action is placed upon the same footing by the argument of counsel, as that of the creditor to set aside a fraudulent conveyance made by his debtor. The cases are similar in principle, but the objection taken to the present action is provided for expressly in the revocatory action and removed. The judgment in that action, in avoiding the fraudulent contract, applies the property conveyed by it, or its value, to the payment of the plaintiff's debt. Civil Code, 1972. We think the provisions of law concerning the revocatory action are in conformity with the views we have expressed concerning the plaintiff's right of action in the case as presented to us, in thus creating a definite interest in the creditor in the result of the litigation which is thus made to inure to his benefit.

KEMP
v.
NICHOLS.

The district judge was of opinion that the judicial mortgages recorded against *Charles N. Rowley*, for an amount exceeding the value of the slaves and having precedence of the plaintiff's mortgage, did not affect her right to recover in this action, and so charged the jury, who found a general verdict for the defendant. The evidence satisfies us that the slaves, at the time of the alleged purchase by the defendant from *Charles N. Rowley*, as the attorney in fact of *Samuel Rowley*, were the property of *Charles N. Rowley*, and not of *Samuel Rowley*, and that the names in which the titles were placed of *Jacob D. Lansing* and *Samuel Rowley*, were used by *Charles N. Rowley* for his exclusive benefit, for the purpose of screening the slaves from his creditors. We do not find that the relations of *Lansing* and *Samuel Rowley* and *Charles N. Rowley*, in respect to these slaves, differ materially from those established in the case of *Rowley* v. *Kemp*, 2 Ann. 362, and *Farrar* v. *Rowley*, Ib. 478.

As to the privity of *Nichols* to the mode of operating of *Charles N. Rowley* which his transactions, which have been the subject of judicial investigation, have disclosed, his position and relations with the latter leave no doubt on our minds, and we do not concur with the jury as to the *bona fides* of the defendant in his alleged purchase of the slaves. Although averse to the reversal of verdicts of juries on questions of fact in cases of this kind, we should have felt ourselves obliged to have set aside this verdict and have ordered a new trial, had the plaintiff made out a sufficient cause of action. As the case stands before us, the only judgment we can render is that of non-suit.

It is, therefore, ordered that the judgment of the District Court be reversed, and that judgment be rendered against the plaintiff as in case of non-suit, with costs in the District Court; the defendant paying those of this appeal.