## JOSEPH DIXON CRUCIBLE CO. v. PAUL.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1909.)

No. 1,806.

1. ASSIGNMENTS (§ 119*)—RIGHT OF ACTION BY ASSIGNEE—LAW GOVERNING.
   When suit is brought by an assignee of a chose in action, the question whether the assignment conferred on him such right of action as he asserts must be decided according to the law of the forum.
   [Ed. Note.—For other cases, see Assignments, Dec. Dig. § 119.*]

2. ASSIGNMENTS (§ 121*)—ACTIONS—RIGHT OF ASSIGNEE TO SUE IN HIS OWN NAME.
   At common law an assignee of a chose in action cannot sue at law thereon in his own name.
   [Ed. Note.—For other cases, see Assignments, Cent. Dig. § 200; Dec. Dig. § 121.*]

3. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISION OF STATE COURTS.
   The construction given to a state statute by the highest judicial tribunal of the state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*
   State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. ASSIGNMENTS (§ 121*)—ACTIONS BY ASSIGNEE—FLORIDA STATUTE.
   Rev. St. Fla. 1892, § 981, which provides that "any civil action at law may be maintained in the name of the real party in interest. This shall not be deemed to authorize the assignment of a thing in action not arising out of contract," as construed by the Supreme Court of the state, does not authorize an assignee of an existing right of action for trespass or trover to maintain an action thereon in his own name.
   [Ed. Note.—For other cases, see Assignments, Dec. Dig. § 121.*]

5. TROVER AND CONVERSION (§ 16*)—ACTIONS—TITLE AND RIGHT OF POSSESSION OF PLAINTIFF.
   To sustain an action in trover, the plaintiff must have had title to or the right of possession of the property at the time of the conversion.
   [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 119; Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Southern District of Florida.

Robert L. Anderson, for plaintiff in error.
E. P. Axtell and C. D. Rinehart, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit for $300,000 damages, brought by R. H. Paul, a citizen of Florida, against the Joseph Dixon Crucible Company, a New Jersey corporation. The declaration contains three counts. The first charges that the defendant converted to its own use and wrongfully deprived John Paul of personal property, that is to say, 15,000 sticks of cedar; the second is to the same effect, except that it charges that the conversion was willful and ma-

licious; the third charges that the defendant company knowingly, willfully, and maliciously converted to its own use and wrongfully deprived John Paul of the use and possession of 9,000 cases of cedar strips intended for use in making lead pencils. In each count it is alleged that John Paul has duly and regularly assigned and transferred "all his right, title, and interest for and on account of said conversion to the plaintiff." The defendant, first by demurrers and later by pleas, presented the defense that the transfer or assignment to the plaintiff by John Paul did not vest in the plaintiff a right of action, or entitle him to institute or maintain an action against the defendant. The further defense was interposed that the declaration shows that the plaintiff had no title or right of possession to the property described at the time of the alleged conversion of the same. The court, in several rulings, decided against these defenses. The case went to trial before the jury on the plea of "not guilty" and other pleas. Evidence was offered by the plaintiff showing that John Paul owned certain lands in Florida on which trespasses were committed by the cutting of cedar timber thereon, and also evidence tending to show that such timber was in part cut, or received when cut, by the defendant company. After these trespasses and conversions were committed on the lands and property of John Paul, he made and signed the following agreement with and transfer to the plaintiff, R. H. Paul:

"This indenture made and entered into this 30th day of December, 1905, by and between John Paul, party of the first part, and R. H. Paul, party of the second part,

"Witnesseth: That the said party of the first part, for and in consideration of the sum of ten dollars and other valuable considerations, receipt whereof is hereby acknowledged, from the said party of the second part, has bargained, sold, transferred and assigned, and by these presents does bargain, sell, transfer and assign unto the said party of the second part, his assigns, all and every right of action which the said party of the first part may be entitled to against the Joseph Dixon Crucible Company and O. Y. Felton, for and on account of trespasses committed on the lands belonging to the said party of the first part, situated in the counties of Lafayette and Taylor, in the state of Florida, and all the right, claim and demand of the said party of the first part against the Joseph Dixon Crucible Company and O. Y. Felton, for the conversion of any timber or other personal property of any kind taken from the lands of the said party of the first part in said counties. * * *"

Many witnesses were examined and much evidence was offered by both parties. It is not necessary, however, to state the evidence in full, as, in our opinion, the decision of the case depends on the question indicated by this brief statement.

The learned circuit judge instructed the jury, as he had ruled on the pleadings, that the assignment was effective to vest the right of action in the plaintiff. The following is part of the charge to which the defendant duly excepted:

"The title of the lands from which it is claimed that this cedar was taken has been admitted in open court to be the property of John Paul; the assignment from him to the plaintiff, R. H. Paul, of the right to bring suit to recover his loss, is admitted as presented, which the court instructs you is a sufficient assignment for the plaintiff to recover any damages, if any, that may be found against the defendant in this action."

There was a verdict for the plaintiff for $4,000, and judgment was entered thereon, and for costs, $621.60. The defendant company has brought the case to this court, and assigns that the Circuit. Court erred in the rulings stated and in the charge.

1. When suit is brought by an assignee of a chose in action, the question as to whether the assignment conferred on him such right of action as he asserts must be decided according to the law of the forum. Accordingly, the Supreme Judicial Court of Massachusetts, in Foss v. Nutting, 14 Gray, 484, a suit on two notes made and assigned in New York, "presenting the question in whose name an action upon the contract shall be brought in this commonwealth," held that "the lex fori must govern." The cases there cited show that the rule is the same in England in suits by assignees on assignments made in foreign countries.

Chief Justice Marshall, in Blane v. Drummond, 1 Brock. 62, Fed. Cas. No. 1,531, a case involving an assignment, held that the right of action must be regulated by the law of the forum.

In Pritchard v. Norton, 106 U. S. 124, 130, 1 Sup. Ct. 102, 106 (27 L. Ed. 104), Mr. Justice Matthews, speaking for the Supreme Court, said:

"Whether an assignee of a chose in action shall sue in his own name or that of his assignor is a technical question of mere process, and determinable by the law of the forum; but whether the foreign assignment on which the plaintiff claims is valid at all, or whether it is valid against the defendant, goes to the merits, and must be decided by the law in which the case has its legal seat."

The suit at bar being brought by an assignee in a United States court of law in Florida, the question raised by the defendant whether or not the assignment vests such title in him as to authorize the suit as brought, and to entitle him to judgment in that court, must be determined by the laws of Florida.

2. By the rule of the common law as first administered, things in action were not assignable. The assignee, by assignment, acquired no right that was recognized in a court of law. But the courts of chancery from an early day rejected this conclusion as unjust, and recognized and protected the rights of the assignee. The position taken by the equity courts had its effect on the courts of law, and they began to recognize the equitable rights of the assignee, and permitted them to be enforced at law by action in the name of the assignor. Finally, statutes were enacted in England and in many states of the Union making designated things in action assignable, and in many instances providing that suit on the things assigned might be brought in the name of the assignee. As to what is assignable, it is stated as a general rule that all things in action which survive and pass to the personal representative of a decedent creditor as assets, or continue as liabilities against the representative of a decedent debtor, are assignable, and that things in action which do not thus survive are not assignable. The application of this general rule has led to many conflicting decisions, and the uncertainty of its application is increased by the varying terms of the statutes controlling in different jurisdictions. We have no need now to test the application of

this general rule, because, conceding for the purposes of this judgment (but not deciding the question), that the thing in action in question, the right to sue for the conversion of the cedar cut by the trespassers from the assignor's land, was assignable, we are confronted with the question whether or not the assignment, on the facts proved, vested in the assignee the right to maintain an action of trover in his own name. As we have said, the ancient rule of the common law in no way recognized the assignability of a chose in action, and when, in later years, the common law did recognize the validity of such assignments, it was on the theory that they conferred equitable rights which could only be enforced at law by an action brought in the name of the assignor. This rule, in the absence of statutes changing it or of modification by a settled course of decisions, continues to this day. Accordingly, actions on such assignments, at common law, cannot be maintained in the name of the assignee, but must be brought in the name of the assignor for the use of the assignee. In New York Guaranty Co. v. Memphis Water Co., 107 U. S. 205, 214, 2 Sup. Ct. 279, 286 (27 L. Ed. 484), Mr. Justice Bradley, speaking for the Supreme Court, said:

"We have lately decided, after full consideration of the authorities, that an assignee of a chose in action on which a complete and adequate remedy exists at law cannot, merely because his interest is an equitable one, bring a suit in equity for the recovery of the demand. Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544, 27 L. Ed. 271. He must bring an action at law in the name of the assignor to his own use. This is true of all legal demands standing in the name of a trustee, and held for the benefit of cestuis que trust."

The controlling question in Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914, 36 L. Ed. 790, was whether or not, at common law, the assignee of a chose in action could sue at law in his own name, and the court quoted and reaffirmed the statement copied above from New York Guaranty Co. v. Memphis Water Co., and, after citing many common-law authorities, said, by Mr. Justice Harlan:

"The right which the express company acquired by the defendant's subscription to its capital stock was only a chose in action. It passed by the deed of September 20, 1866, to the trustees, Blair, Kelly, and O'Donnell, but subject to the condition that a chose in action is not assignable so as to authorize the assignee to sue at law, in his own name, unless the right to do so is given by a statute, or by settled law, in the jurisdiction where suit is brought. This is the well-established rule of the common law, and the common law touching this subject governs in the District of Columbia."

3. The common law was adopted in Florida in 1829, and, except as changed by statute or modified by judicial decisions, remains in force there.

When this action was brought on January 6, 1906, the following statute was in force, which is relied on as changing the common-law rule:

"Real Parties in Interest.—Any civil action at law may be maintained in the name of the real party in interest. This shall not be deemed to authorize the assignment of a thing in action not arising out of contract. An executor, administrator, trustee of an express trust (including a person with whom or in whose name a contract is made for the benefit of another, or when expressly authorized by statute), may sue without joining with him the person for whose benefit the action is prosecuted." Rev. St. Fla. 1892, § 981.

Subsequently, by a revision which went into effect December 1, 1906, the following was added to section 981:

"By amendment the nominal plaintiff may be stricken out and the case may proceed in the name of the use plaintiff." Gen. St. Fla. 1906, § 1365.

It is not incumbent on us to analyze and construe this statute if we find the question involved here settled by a construction placed on it by the highest court of the state of Florida, "for the construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text." Leffingwell v. Warren, 2 Black, 599, 605, 17 L. Ed. 261; Bucher v. Cheshire R. R. Co., 125 U. S. 555, 582, 8 Sup. Ct. 974, 31 L. Ed. 795. The application of this rule makes the following excerpt from Knight v. Empire Land Co., 55 Fla. 301, 45 South. 1025, 1028, for the purposes of our decision, a part of the statute:

"But, aside from this, as we have also before stated, our statute does not authorize the assignment of a cause of action arising purely out of a tort, so as to permit the assignee to maintain such action in his own name."

This statement was made by the Supreme Court of Florida January 29, 1908, in an action of trover. And in 1895 the same court, in an action of trespass, announced a principle that would lead to the result that the person damaged by the tort must be the plaintiff:

"Where lands are trespassed upon, a party to be entitled to sue and recover for such trespass must have been the owner, or in possession of the land, at the time of the trespass. If he does not acquire any ownership over, or possession of, the land until after the acts of trespass, then, it is well settled, he cannot recover damages for such trespass. And it behooves the plaintiff in such cases to show that at the time of the alleged trespass he was either the owner of the land trespassed upon, or else in the actual possession thereof." Yellow River R. R. Co. v. Harris, 35 Fla. 385, 17 South. 568.

And in Wright v. Skinner, 34 Fla. 453, 16 South. 335, which was an action of trover, it was held that a plaintiff who had neither possession nor title to the land could not maintain trover for logs taken therefrom.

These cases all indicate that the statute, the second sentence of which must, to some extent, limit its operation—"this shall not be deemed to authorize the assignment of a thing in action not arising out of contract"—was not intended to confer on an assignee of a chose in action "not arising out of contract" the right to maintain action thereon in his own name. This might well be true, although the assignment in question was not wholly ineffective.

We are confirmed in the view that the foregoing cases show the settled construction placed by the Florida Supreme Court on the statute by the fact that, although it was enacted in 1881, no case has been cited in which it has been held by that court that the assignee of a chose in action "not arising out of contract" can maintain a suit thereon in his own name.

4. These Florida decisions seem to be in harmony with the view taken by the federal Supreme Court.

The principle that, to maintain trover, "the plaintiff is bound to prove a right of possession in himself at the time of the conversion,"

is announced in United States v. Loughrey, 172 U. S. 206, 212, 19 Sup. Ct. 153, 43 L. Ed. 420.

There are no words in the assignment made by John Paul to the plaintiff indicating an intention to transfer to him the timber taken from the lands. The thing described as assigned is the right of action on account of trespasses committed on the assignor's lands, and the right, claim, and demand of the assignor for the conversion of the timber. If John Paul had sold the severed timber to the plaintiff and the plaintiff had demanded it of the defendant, it being in the defendant's possession, and the defendant had refused to surrender it to the plaintiff, an action for its conversion might have been maintained. Tome v. Dubois, 6 Wall. 548, 554, 18 L. Ed. 943. The right to recover in that case would be based on the refusal to surrender the property to the plaintiff, such refusal being evidence of a conversion then made; but, as the Supreme Court said in the case last cited, in reference to a conversion of the property before the plaintiffs' right accrued:

"They could not rely on those acts with any hope of success, as the plaintiffs, at those dates, had no title to the lumber, which at that time was vested in their vendors."

The judgment must be reversed, and the cause remanded for further proceedings in accordance with the opinion of this court.