## HASSENFRATS, *qui tam,* &c., *against* KELLY.

*A person who sells and conveys land, without the knowledge that there is a subsisting adverse possession, is not liable to the penalty for selling a pretended title under the 8th section of the act, to prevent champerty and maintenance. (1 N. R. L. 173.)*
*The seller of land is, however, in the first instance, to be presumed conusant of the situation of it.*
*Where a person enters upon new lands, without claim or colour of title, and conveys them, by deed, to a third person, and the lawful owner of the land, not having notice of these facts, afterwards sells and conveys the same, he is not liable to the penalty for selling a pretended title.*

THIS was an action of debt, on the 8th section of the statute, to prevent and punish champerty and maintenance, brought

against the defendant for selling a lot of land, in the town of *Sempronius,* and county of *Cayuga,* which it was alleged was, at the time of sale, held adversely to the defendant. The cause was tried before Mr. Justice *Yates,* at the *Cayuga* circuit.

The premises in question are part of lot No. 19., in *Sempronius,* in the military tract, which was patented to one *Christian Kelly,* a soldier. In *April,* 1810, the plaintiff entered upon 100 acres, in the north-east corner of the lot, and was possessed thereof until the 14th of *April,* 1812, when he contracted to sell to *Jacob Brink,* who immediately entered, and has ever since been in actual possession. On the 10th of *August,* 1812, the defendant, and *Silena,* his wife, by their deed, conveyed the north half of the said lot, No. 19., to *Daniel Hutchinson* and *Charles Stuart;* but the defendant, at the time of executing that deed, had no knowledge of the adverse possession of *Hassenfrats* or *Brink.*

A verdict was found for the plaintiff, for the value of the land, subject to the opinion of the court. The case was submitted to the court without argument.

SPENCER, J., delivered the opinion of the court.

It is admitted, that when the defendant gave the deed, which is the act of *champerty* complained of, he had no knowledge of the adverse possession of *Hassenfrats* or *Brink.* In truth, therefore, the deed was not given for maintenance. Indeed, it does not appear, in point of fact, that the plaintiff, when he entered and took possession of the 100 acres in the north-east corner of the lot, so entered under a claim of *title;* nor does it appear that when he contracted to sell to *Brink,* two years afterwards, that he agreed to sell any other than his possessory right. To produce the consequences of a violation of a penal statute, exposing the party to a forfeiture of the value of the land sold, it ought to appear, expressly, that there was a person in possession at least claiming to own the land. From the facts in this case, that does not appear. The plaintiff may have been a mere intruder upon the land, without claim or colour of title, and his agreement to sell to *Brink* may have been merely for his possession. The court, therefore, are of opinion, that the defendant has been guilty of no offence within the statute, and, on this ground, we think judgment should be given for the defendant. I am prepared to go further. My opinion would be, that had it appeared that

the plaintiff sold to *Brink* by a warranty deed, yet the defendant would not have been liable to this action, under the circumstances of that case.

The statute intended to punish persons for selling pretended rights to land, for the purpose of maintenance, and when it is evident that such intention did not exist, there can be no offence. A contrary argument may be derived from the statute, which subjects the taker, or buyer, to the same penalty as the seller, if he knew the sale to have been made against the provisions of the act, indicating, that if the taker, or buyer, did not know it, he should not incur the penalty; and as the statute is silent as to the knowledge or ignorance of the seller, it may be inferred, that the legislature intended to punish him, without regard to that fact, on the ground that he is chargeable with the knowledge of the state and circumstances of his own lands. It would be the legal intendment, undoubtedly, that every man knew the situation of his real property; but if he could show that he did not know it, it would be very unreasonable to subject him to a penalty, for an offence perfectly unintentional. The deed, under such circumstances, would be void and inoperative, and there is no good reason why an innocent person, unconscious of offence, should be punished beyond that. In the case of *Partridge* v. *Strange & Croker*, (1 *Plowd.* 80. 88. 1 *Dyer*, 746.) an exception was taken to the declaration, that there was no averment that the bargain and sale was for maintenance, and the court held it to be a good exception, and that the plaintiff had not shown the case to be within the danger of the statute, saying, that was the point of the statute. If it was necessary to make that averment, it was necessary to show a state of facts proving it to be true; and where it clearly appears, that the bargain and sale was not for maintenance, the spirit and intention of the statute are not infringed. This was clearly the inclination of the late chief justice's opinion in *Jackson* v. *Demont*, (9 *Johns.* 59.,) though this precise point was not then before the court.

In the case of *Jackson* v. *Selleck*, (8 *Johns.* 262.) the question was, whether a *feme covert*, being the owner of wild and uncultivated land, was to be considered as in fact possessed so as, on her death, to give to her husband a *tenancy by the curtesy*, without an actual entry, or *pedis possessio;* and it was held that she was. The late chief justice, delivering the unanimous opinion of the court, said, " we must take the rule with such a construction as

the peculiar state of new lands in this country requires, and this may be done without any departure from the spirit and substance of the *English* law." If we should hold that the plaintiff was entitled to recover in the present case, it would be impossible for any man, owning lands in the unsettled part of our country, to convey them with safety; for, peradventure, some man may have intruded upon them, who would have the hardihood to give a warranty deed. If, then, it should be questionable, under the *English* adjudications, whether the defendant had not been guilty of *champerty*, in deciding this question here, we must regard the very different state of our country; and noticing, that it seems to me impossible to maintain the proposition that a person shall be punished, as for a crime, when not only no crime was intended, but the supposed delinquent had every reason to believe, from the state of the property, that he might lawfully sell it.

NEW YORK,<br>October, 1816.

Judgment for the defendant.

