(96 N W. Rep. 324.)

---

JOHN P. GALBRAITH *v.* J. A. PAYNE.

Opinion filed July 1, 1903.

**Maintenance—Common Law Doctrine Not Abolished but Perpetuated in this State.**

　　1. The common law doctrine which condemns as void a grant of land, which is held adversely under claim of title, by a grantor who has not been in possession or taken rent for the space of a year prior thereto, as an act of maintenance, was not abolished by the Revised Codes of 1895, but was perpetuated, and remains in force in this state.

**Conveyance of Pretended Title to Land—Void as to Party in Adverse Possession.**

　　2. Section 7002, Rev. Codes, makes it a misdemeanor for any person to convey any pretended title to land, unless the grantor has been in possession or taken rent for the space of a year prior thereto. A deed executed in violation of this section is void, but its invalidity extends only to the party in adverse possession claiming title. As between the grantor and grantee and all other persons, it is valid.

**Grantee of Such Title Can Sue Only in Name of Grantor.**

> 3. The grantee under a deed which is invalid under the above section may not maintain an action in his own name against the adverse claimant, because, as to the latter, his deed is invalid. An action may be maintained against such claimant, however, in the name of the grantor for the grantee's use; and for the purpose of maintaining such action the grantor is the real party in interest within the meaning of section 5221, Rev. Codes.

**Deeds Executed in Violation of Sec. 7002 Are Void as to Party in Adverse Possession.**

> 4. It is *held*, in an action to determine adverse claims to real estate upon a trial *de novo* under section 5630, Rev. Codes, that the deeds upon which plaintiff relies to establish his title were executed and delivered in violation of section 7002, Rev. Codes, and are, therefore, void as to the defendant.

Appeal from District Court, Nelson County; *Fisk*, J.

Action by John P. Galbraith against J. A. Payne and others. Judgment for plaintiff, and defendant Payne appeals.

Reversed.

*Newman, Spalding & Stambaugh*, for appellant.

Plaintiff must recover under his deed from St. Paul Harvester Company. *Dever* v. *Cornwall*, 10 N. D. 123, 86 N. W. Rep. 227. His deed is void as to the defendant, under section 7002, Rev. Codes. The statute applies to all titles whether good or bad. 1 Russell on Crimes 180; 2 Bishop on Criminal Law, section 136; *Tomb* v. *Sherwood*, 13 Johnson 291; Bacon's Abrs. Maintenance E.; *Teel* v. *Fonda*, 7 Johnson (N. Y.) 251. The seller is presumed to have knowledge of the condition of the title. *Hassenbrat* v. *Kelly*, 13 Johns. (N. Y.) 466. The transaction is contrary to express law, and therefore unlawful. Section 3920, Rev. Codes. As against a person holding adversely the deed is a mere nullity. *Livingston* v. *Proseus*, 2 Hill 529. This action is barred by the statute of limitation. Chap. 126, Laws of 1897, section 79. The statute runs against all defects whatever their nature. *Saranac L. & T. Co.* v. *Roberts*, 177 U. S. 328. Similar statutes barring inquiry into all questions except the taxability of the land, the non-payment of the taxes, and the redemption of the land, have frequently been held valid and curative of the defects in the assessment. *Geekie* v. *Kirby Carpenter Co.*, 106 U. S. 379, 27 L. Ed. 157; *Terry* v. *Anderson*, 95 U. S. 628, 24 L. Ed. 365; *Williams* v. *Supervisors*, 122 U. S. 163, 30 L. Ed. 1090;

in re *Brown,* 135 U. S. 701, 34 L. Ed. 316 ; *Bronson* v. *St. Croix Lbr. Co.* 44 Minn. 348, 46 N. W. Rep. 570 ; *Coulter* v. *Stafford,* 48 Fed. 266 ; *Imp. Co.* v. *Bardon,* 45 Fed. 706 ; *Ensign* v. *Barse,* 107 N. Y. 329 ; *Ostrander* v. *Darling,* 127 N. Y. 70 ; *Allen* v. *Armstrong,* 16 Iowa 508 ; *Freeman* v. *Thayer,* 33 Me. 83 ; *Smith* v. *Cleveland,* 17 Wis. 563 ; *Pillow* v. *Roberts,* 13 How. 472, 14 L. Ed. 228. The defects found are no ground for setting aside the sales under section 72, chapter 132 of Laws of 1890, or section 78, chapter 126, Laws of 1897, such defects being by those statutes rendered immaterial after sale. The defects found in the levies of state taxes of 1890, 1891, 1892, 1894, 1895, 1897, and 1898 by percentages are within the power of the legislature prior to the sale. *Shattuck et al.* v. *Smith et al.,* 10 N. D. 56, 69 N. W. Rep. 5 ; *Dever* v. *Cornwall,* 10 N. D. 123, 86 N. W. Rep. 277. Such power may be exercised in its discretion by retroactive, curative act, and by statute of limitations contained in the act providing for the levy, or passed afterwards, or by any other provision clearly showing the intention to render the requirement directory. Cooley on Con. Lim. (6 Ed.) 457 ; *Ensign et al.* v. *Barse et al.,* 107 N. Y. 337, 15 N. E. Rep. 401 ; *Wells Co.* v. *McHenry,* 7 N. D. 256, 74 N. W. Rep 241 ; *Saranac Land & Trust Co.* v. *Roberts,* 177 U. S. 330, 44 L. Ed. 792 ; *Terry* v. *Anderson,* 95 U. S. 628, 24 L. Ed. 365 ; *People* v. *Turner,* 145 N. Y. 451, 40 N. E. Rep. 400. A departure from the strict letter of the statute, cannot be said to be a jurisdictional defect in a constitutional sense, and the legislature may validate acts which it might originally have authorized, and limit the time within which actions to set aside tax sales based on irregularities may be commenced. *Ensign* v. *Barse, supra; People* v. *Turner, supra.* Under the provisions in question all inquiry is foreclosed, as to other facts, and the state guarantees the purchaser that his purchase shall not be assailed, except for one of the reasons stated. *Dunda* v. *Harlan,* 25 Pac. 883 (Kan.) ; *Martin* v. *Garrett,* 30 Pac. 168 (Kan.) ; *Hiles* v. *LaFlesh,* 18 N. W. Rep. 435 (Wis.) ; *Oconto* v. *Jerraud,* 50 N. W. Rep. 591 (Wis.) ; *Sherry* v. *Gilman,* 17 N. W. Rep. 252 (Wis.)

*C. J. Murphy,* for the respondent.

Statutes of limitations cannot apply to cases where the assessment, or some other vital step was defective. *Roberts* v. *Bank,* 8 N. D. 474, 79 N. W. Rep. 993 ; *Sweigle* v. *Gates,* 9 N. D. 538, 84 N. W. Rep. 481 ; *Powers* v. *Kitching,* 10 N. D. 254, 86 N. W. Rep. 737.

Defendant is entitled to relief. Tax certificates prove nothing outside of the regularity of the proceedings pertaining to the sale. *Sanborn* v. *Cooper,* 17 N. W. Rep. 856; *Smith* v. *Ryan,* 11 S. W. Rep. 647; *DeTreville* v. *Smalls,* 98 U. S. 521, 25 L. Ed. 174; 2 Desty on Taxation. There is no evidence to show assessment and levy of tax upon which the sales set forth in the certificate were made. Tax certificates offered no proof of these. Tax certificates for 1891, 1892, and 1895 are involved, 1st, because the assessment was defective for each of these years; 2d, because the state levies for those years were made by percentages and not in specific amounts. The assessment for 1891 and 1890 was bad, as the land is described therein "S. W. 4-10" and did not contain township and range. *Powers* v. *Bowdel,* 3 N. D. 107, 54 N. W. Rep. 404; *Sheets* v. *Paine,* 10 N. D. 103, 86 N. W. Rep. 118.

If the title conveyed is a *real,* not a *pretended* title, that is no violation of section 7002, Rev Codes. Courts have for years found and still find ways of evading this statute. 48 Warvelle on Vendors, 33; 4 Kent. Com. 477. Where such conveyances are discouraged they have been held to be good against the grantors and all others except the adverse possessor. 1 Warvelle on Vendors 34; *University* v. *Joslyn,* 21 Vt. 52; *Abernathy* v. *Boazman,* 24 Ala. 189; *Hamilton* v. *Wright,* 37 N. Y. 502. The grantee may recover possession to his own use in the name of the grantor. 1 Warvelle on Vendors 34, and cases cited; Maupin on Marketable Title to Real Estate, section 212; *Farnum* v. *Peterson,* 111 Mass. 148, and cases cited. But this principle does not exist in this state. The old common law rule was expressly adopted. But there has been an express repeal of this obsolete rule by the action of the revisors of the codes, who have dropped sections 3303 and 4870 of Compiled Laws, as far as it provided for an action in the name of the grantor. The rule in this state is propounded in *Kreuger* v. *Schultz,* 6 N. D. 301, 70 N. W. Rep. 269. That courts look with disfavor upon this law see *Crary* v. *Goodman,* 22 N. Y. 177; *Higanbotham* v. *Stoddard,* 72 N. Y. 94.

YOUNG, C. J. This is an action to determine adverse claims to 160 acres of land situated in Nelson county, and to recover possession. The plaintiff deraigns his title as follows: (1) A patent from the United States government to Frank A. Willson, dated March 26, 1886; (2) a quitclaim deed from said Frank A. Willson to the St. Paul Harvester Company, a corporation, executed and delivered on May 8, 1900; (3) a quitclaim deed from the St. Paul Harvester

Company to the plaintiff, dated April 25, 1901. All of said deeds were recorded at or about the time of their execution. The defendant Paine claims title under two tax deeds executed by the county auditor of Nelson county—one in 1894, upon a sale of the premises for the tax of 1889; the other executed in 1895 upon a sale for the tax of 1890. He also claims liens under six tax certificates issued upon tax sales for the taxes of 1891, 1892, 1895, 1896, 1897, and 1898, and also for taxes paid for the years 1893, 1894, 1899, and 1900. Paine took possession of the premises on May 7, 1898, and leased the same to the defendant Turcotte upon shares. His possession has continued since, and during the years 1898, 1899, and 1900 he received the rents from his tenant, and at all times held possession and claimed title to said premises under his tax deeds. The trial court found that the plaintiff was the owner of the premises, and entitled to possession thereof; that both of defendant Paine's tax deeds were void; that all of his tax certificates were void, except the one issued in 1897 upon the tax of 1896; and, further, that the taxes paid by the defendant were voluntarily paid, and do not constitute liens. Judgment was entered canceling and discharging of record all claims and demands of the defendant Paine by virtue of his tax deeds, tax certificates, and payment of taxes, except as to the tax certificate for the tax of 1896, and awarding possession of the premises to the plaintiff. The defendant Paine appeals from the judgment and asks a review under section 5630, Rev. Codes.

The case involves no disputed facts. The first question presented relates to plaintiff's title. Counsel for appellant contend that plaintiff has failed to establish his title. Their contention is that Willson's deed to the St. Paul Harvester Company and the latter's deed to the plaintiff are void as to the defendant, and that, plaintiff having failed to establish his title and right of possession in the premises, the action should, therefore, be dismissed. This contention must be sustained. It is agreed that neither Willson nor the St. Paul Harvester Company were in possession of the premises, or took the rents and profits thereof, during the year preceding the execution of their deeds. In fact, the St. Paul Harvester Company, the plaintiff's grantor, never was in possession. On the other hand, the defendant Paine was in possession three years before the deed to plaintiff was executed and two years before the Willson deed was executed, claiming title under his tax deeds. Further, he received the rents and profits of the premises during all of that period. Upon this state of facts, under

the law of this state, both deeds must be held void as to the defendant. The common-law doctrine, which condemns as void conveyances of real estate when title is in suit, or when the vendor has not been in possession or taken rents for the space of a year prior to the conveyance, as acts of champerty and maintenance, has not been abolished in this state, but, on the contrary, is perpetuated by. express statute. Section 7001, Rev. Codes, makes it a misdemeanor for any person to take a conveyance of lands, or of any interest or estate therein, from any person not in possession, where such lands are the subject of controversy in court, knowing the pendency of the suit and that the grantor was not in possession. Section 7002, Rev. Codes, provides that: "Every person who buys or sells or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the per-son making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a misdemeanor." The sweeping condemnation of the above sections is modified by section 7003, which reads as follows: "The last two sections shall not be construed to prevent any person having a just title to lands, upon which there shall be an adverse possession, from executing a mortgage upon such lands." The fact that mortgages are thus excepted strongly emphasizes the legislative purpose to con-demn as void all conveyances not thus excepted. Section 4708 of the Civil Code repeats the exception of mortgages from the condemnation of the foregoing provisions of the Penal Code. That section provides that: "A mortgage may be created upon property held adversely to the mortgagor. A mortgage of property held adversely to the mortgagor takes effect from the time at which he or one claiming under him obtains possession of the property, but has precedence over every lien upon the mortgagor's interest in the property, created subsequently to the recording of the mortgage." The right to mortgage is saved, but it will be noted that by the very terms of the statute a mortgage given upon property adversely held does not take effect until the mortgagor, or his successors, obtains possession of the property. The facts of this case bring both the Willson deed and the St. Paul Harvester Company deed under the

direct condemnation of section 7002, *supra*. The grantors had not been in possession of the premises or received the rents thereof for the space of a year prior to the execution of the deeds. The title attempted to be conveyed was a "pretended title," according to the meaning of that phrase as it is used in the statute. The words of the statute are that no person shall buy or sell any pretended right or title, or make or take any promise, grant or covenant to have any right or title of any person to any lands, etc. Under this statute it is well settled that it is immaterial whether the right or title purchased or sold be good or bad; for, if it be ever so good, if the vendor is not in possession, nothing passes by the deed, and the case comes within the statute. *Tomb* v. *Sherwood*, 13 Johns. 288.

Chancellor Kent, in reviewing the common-law doctrine upon which the New York statute just quoted is based, in 4 Kent's Comm. 466, said: "There is one check to the power of alienation of a right or interest in land, taken from the statute of 32 Hen. VIII, c. 9, against selling pretended titles; and a pretended title, within the purview of the common law, is where one person lays claim to land of which another is in possession, holding adversely to the claim. Every grant of land, except as a release, is void as an act of maintenance, if, at the time, the lands are in actual possession of another person, claiming under a title adverse to that of the grantor. This principle has always been received as settled law in New York, and it has been incorporated into the Revised Statutes. But even in such a case the claimant is allowed by the statute to execute a valid mortgage of the lands, which has preference, from the time of recording it, over subsequent judgments and mortgages, and binds the lands from the time of recovering possession. The ancient policy, which prohibited the sale of pretended titles, and held the conveyance to a third person of lands held adversely at the time to be an act of maintenance, was founded upon a state of society which does not exist in this country. A right of entry was not assignable at common law, because, said Lord Coke, 'under colour thereof pretended titles might be granted to great men, whereby right might be trodden down, and the weak oppressed.' The repeated statutes which were passed in the reigns of Edward I and Edward III against champerty and maintenance arose from the embarrassments which attended the administration of justice in those turbulent times from the dangerous influence and oppression of men in power. The statute of 32 Hen. VIII imposed a forfeiture upon the seller of the

whole value of the lands sold, and the same penalty upon the buyer also, if he purchased knowingly. This severe statute was re-enacted literally in New York in 1788, and in Virginia in 1786; but the penal provisions are altered by the New York Revised Statutes, which have abolished the forfeiture, and made it a misdemeanor for any person to buy or sell, or make or take a promise or covenant to convey, unless the grantor, or those by whom he claims, shall have been in possession of the land, or of the reversion or remainder thereof, or of the rents and profits, for the space of a year preceding. The provision does not apply to a mortgage of the lands, nor to a release of the same to the person in lawful possession. It seems to be unnecessarily harsh; but it is to be observed that it was a principle conformable to the whole genius and policy of the common law that the grantor in a conveyance of land (unless in the case of a mere release to the party in possession) should have in him at the time a right of possession. Feoffment was void without livery of seisin, and without possession a man could not make livery of seisin. This principle is not peculiar to the English law. It was a fundamental doctrine of the law of feuds on the continent of Europe. No feud could be created or transferred without investiture, or putting the tenant into possession; and delivery of possession is still requisite in Holland and Germany to the transfer of real property. It seems to be the general sense and usage of mankind that the transfer of real property should not be valid unless the grantor hath the capacity, as well as the intention, to deliver possession. Sir William Blackstone says that it prevails in the Codes of 'all well-governed nations,' for possession is an essential part of the title and dominion over property. * * * The doctrine that a conveyance by a party out of possession and with an adverse possession against him, is void, prevails equally in Connecticut, Massachusetts, Vermont, Maryland, Virginia, North Carolina, Tennessee, Kentucky, Indiana, and probably in most of the other states. There are some states, such as New Hampshire, Pennsylvania, Illinois, Missouri, and Louisiana, in which the doctrine does not exist."

In *Crary* v. *Goodman,* 22 N. Y. 170, Selden, J., states that the purpose of the statute was to prevent the transfer of disputed titles, and compel their settlement between the original parties. Where the doctrine prevails, deeds executed in violation thereof are, without exception, held to be void. The invalidity of such deeds, however, exists only between the grantor and those holding adversely and

their successors. As between the parties to the deed and all other persons, it is valid. It does not work a forfeiture of title in favor of the adverse possessor. While it is true that the grantee may not maintain an action in his own name against the adverse possessor unless expressly authorized by statute, for the reason that as to the latter the deed is void, yet an action may be maintained in the name of the grantor for his use. Such, generally stated, is the doctrine of the cases. *Jackson* v. *Demont,* 9 Johns. 55, 6 Am. Dec. 259; *Livingston* v. *Peru Iron Co.,* 9 Wend. 512; *Van Hoesen* v. *Benham,* 15 Wend. 165; *Jackson* v. *Brincherhoff,* 3 Johns. Cas. 101; *Williams* v. *Jackson,* 5 Johns. 489; *Jackson* v. *Leggett,* 7 Wend. 377; *Livingston* v. *Proseus,* 2 Hill 526; *Chamberlain* v. *Taylor,* 12 Abb. N. C. 473; *Hamilton* v. *Wright,* 37 N. Y. 501; *Hassenfrats* v. *Kelly,* 13 Johns. 466; *Teele* v. *Fonda,* 7 Johns. 251.

In *Livingston* v. *Proseus, supra,* Bronson, J., speaking for the court, said: "It is extremely well settled that a conveyance of lands which are at the time held adversely to the grantor is inoperative and void. It would seem to follow from this doctrine that the title remains in the grantor, and that he may assert it in the same manner as though the deed had not been made. But it is equally well settled that, as between grantor and grantee, any persons standing in legal privity with them, the deed is operative, and passes the title. * * * From these two propositions, towit, that the owner has parted with his title, and that the grantee cannot assert it on account of the adverse holding which avoids the deed, it has been supposed to result as a necessary consequence that the title was extinguished or lost. But it has been denied that any such consequence follows. * * * Indeed, it may be laid down as a maxim in the law that a title which once existed must continue to reside somewhere. It cannot be annihilated. * * * It is often said in the books, without any qualification, that the deed is void. But that is only true in relation to the person holding adversely and those who afterwards come in under him. As to all the rest of the world the deed is valid, and passes the title from the grantor to the grantee. This, I think, is sufficiently established by the cases already mentioned and the authorities on which they rest. The deed is void as against the party who might otherwise be injured, but it is good as to all others. * * * But as against the person holding adversely the deed is utterly void —a mere nullity. There was an attempt to convey, but the parties failed to accomplish the object. The title still remains in the original

proprietor, and he may—indeed, must—sue to recover the land. It is true that the recovery will inure to the benefit of the grantee in the deed; but that is a matter between him and the grantor, and with which the person holding adversely has nothing to do. It is enough for him that the deed does him no injury."

An examination of the authorities will show that, while a deed of a disseisee conveys no title which can be enforced in the name of the grantee against the disseisor or his privies, they go no further. It is now held that such deed is good against the grantor, and that it entitles the grantee to an action to recover the land, in the name of the grantor, but to his own use, even against the desseisor. *Farnum* v. *Peterson,* 111 Mass. 148; *Wade* v. *Lindsey,* 6 Metc. 407; *Cleaveland* v. *Flagg,* 4 Cush. 76. *McMahon* v. *Bowe,* 114 Mass. 140, 19 Am. Rep. 321. By executing and delivering the deed the grantor impliedly authorizes the grantee to use his name in an action to recover the land, and for that purpose the grantor is a real party in interest within the meaning of the statute requiring every action to be prosecuted in the name of the real party in interest. *Steeple* v. *Downing,* 60 Ind. 478.

Counsel for plaintiff urges that the necessity of the law under consideration has long since disappeared; that it has outlived its usefulness; and that it is "the duty of this court to hold that the law invoked by the appellant in this case shall not defeat what would unquestionably, in the absence of the statute, be a just and valid title." It is true the common-law doctrine and statutes declaratory thereof seem to be in increasing disfavor in a number of states, on account of the embarrassing restrictions placed upon the right of free alienation. See *Kreuger* v. *Schultz,* 6 N. D. 310, 70 N. W. Rep. 269. The legislature of South Dakota passed an act in 1899 (chapter 109, p. 144, of the Laws of 1899) which expressly authorizes transfers by persons out of possession, and gives to their grantees the same rights as are obtained by persons receiving conveyances from parties in possession. Similar abrogating statutes will be found in several other western states. The older states, notably New York and Massachusetts, firmly adhere to the common-law doctrine. Ohio, at an early date, repudiated it. The fact that this had been done, however, was deplored by Hitchcock, J., who wrote the opinion in *Cressinger* v. *Lessee of Welch,* 15 Ohio, 156, 45 Am. Dec. 565, in the following language: "I have no hesitation in saying that, in my opinion, the rule contended for by plaintiff's counsel would be bene-

ficial, and highly conducive to the public interest. It would prevent the practice of purchasing doubtful titles. It might interfere with the interest of keen sighted speculators, who make it a business to hunt up and purchase in such titles; but it could do no injury to the honest man. But, although such is my opinion, still, acting in a judicial capacity, I cannot consent to change the rule. Such change would interfere with a multitude of land titles heretofore acquired, and acquired, too, with a knowledge of the law as expounded by the court. But there is a body which can apply a remedy which shall operate hereafter. That body is the general assembly. And to me it is a matter of surprise that we have not an act upon our statute books declaring void sales made under the circumstances referred to by counsel in their second request to the court. But, until some statute of the kind is enacted, we feel ourselves bound by the law as heretofore settled." The common-law doctrine has existed in this jurisdiction since the organization of the territory. Whether it is wise or unwise is a question of public policy for the legislature to determine. The power to abolish it rests with the legislature, and not with the courts. So long as it remains the law of this state, it is the duty of the courts to give it effect.

Counsel also claims that the common-law doctrine, which admittedly was in force in this state prior to 1895, was abrogated by the adoption of the Revised Codes of 1895. This argument is based upon the fact that the Revised Codes wholly omit section 3303 of the Compiled Laws, which provided that: "Every grant of real property * * * is void, if at the time of the delivery thereof, such real property is in the actual possession of a person claiming under a title adverse to that of the grantor;" and also omit that portion of section 4870, Comp. Laws, which declared that a grantee of land under the void grant might maintain an action in the name of the grantor. These omissions did not affect the law as it theretofore existed. The provisions of section 3303 and that part of section 4870 which was omitted were merely legislative declarations of the common law as it existed independent of those provisions. As has been seen, where the common-law doctrine prevails—and concededly it was in force in this state—a grant, under the circumstances described in section 3303, is void. Further, its invalidity extends only to the adverse possessor, and the grantee may maintain an action in the name of the grantor. That authority existed independent of section 4870. It is patent, therefore, that the mere omission of these provisions was

without effect or special significance. No abrogating statute has ever been enacted in this jurisdiction. On the contrary, sections 7001, 7002, and 7003 of the Penal Code, above referred to, were retained, and are still in force. Section 7002 makes it a misdemeanor for any person to convey any pretended title to lands, unless he or those under whom he claims have been in possession or have taken the rents and profits for one year before his conveyance. The deed upon which the plaintiff relies to establish his title was executed in violation of this section. It was, therefore, void, as contrary to the express provisions of the statute, and contrary to the policy of the law of this state as expressed in said section. See section 3920, Rev. Codes. Counsel says in his brief that this section "was overlooked by both the commissioners and the legislature in revising the Code, and that the intent to repeal it existed, but it escaped by oversight," and asks us to give this alleged intent effect, and hold that the statute was in fact repealed. It is idle to speculate upon the undisclosed intention of the legislature and of the Code commissioners. The Code, as adopted, and the statutes as they exist, represent the legislative will, so far as we can take cognizance of it. As we have seen, the Revised Codes did not abrogate the common-law doctrine, but, on the contrary, perpetuated it.

It follows from what we have said that the plaintiff wholly failed to sustain his title. The district court is directed to vacate the judgment entered, and to enter a judgment dismissing this action. All concur.