S. H. CRANMER, E. A. Cranmer, F. W. Cranmer, L. E. Powers, and James H. Welch, as Trustees of the Union Banking Company, a Corporation, dissolved, v. S. S. LYON, as Administrator of the Estate of John A. Paine, Deceased, and Emma S. Paine, N. Emmons Paine, Howard S. Paine, Clarence N. Paine, and Emily Paine Howe, Heirs at Law of John A. Paine, Deceased.

(158 N. W. 272.)

Evidence examined and it is *held* that plaintiffs have failed to establish any right of recovery.

Opinion filed May 13, 1916. Rehearing denied June 13, 1916.

From a judgment of the district court of Nelson County, *Cooley*, J. plaintiffs appeal.

Affirmed.

*Pfeffer & Pfeffer, Crofoot & Ryan,* and *S. H. Cranmer,* for appellants.

A purchaser at a tax sale acquires an estate or interest in real property. It is inchoate, in that it may be defeated by redemption; but if no redemption, it will ripen into a complete title upon the issuance of a tax deed. Clark v. Darlington, 7 S. D. 148, 58 Am. St. Rep. 835, 63 N. W. 771; Axtell v. Gerlach, 67 Cal. 483, 8 Pac. 34; Brace v. Van Eps, 12 S. D. 195, 80 N. W. 197; Eaton v. Manitowoc County, 44 Wis. 492; Horn v. Garry, 49 Wis. 469, 5 N. W. 897; Smith v. Clarke, 7 Wis. 551; Whitney v. State Bank, 7 Wis. 620; Mowry v. Wood, 12 Wis. 414; Dodge v. Silverthorn, 12 Wis. 645; Jarvis v. Dutcher, 16 Wis. 308.

The assignment of the tax certificates as collateral security for a debt is analogous to an assignment by the vendee of his interest in a contract for the sale of land, for a like purpose, and makes the assignee an equitable mortgagee. · Lamm v. Armstrong, 95 Minn. 434, 111 Am. St. Rep. 479, 104 N. W. 304, and note the same case in 5 Ann. Cas. 420; Colebrooke, Collateral Securities, § 87, and note 2; Brown v. Tyler, 8 Gray, 135, 69 Am. Dec. 239; Whipple v. Blackington, 97 Mass. 476; Montague v. Boston & A. R. Co. 124 Mass. 245; Stevens v. Dedham Inst. for Sav. 129 Mass. 549.

In actions where a corporation is a party, the subject-matter of the testimony forbidden by the statute is limited "to any transaction had with the testator or intestate," and does not include a "statement" by the testator or intestate, relating to testimony by parties. St. John v. Lofland, 5 N. D. 140, 64 N. W. 930; First Nat. Bank v. Warner, 17 N. D. 76, 114 N. W. 1085, 17 Ann. Cas. 213; Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; Witte v. Koeppen, 11 S. D. 598, 74 Am. St. Rep. 826, 79 N. W. 831; Snyder v. Fiedler, 139 U. S. 478, 35 L. ed. 218, 11 Sup. Ct. Rep. 583; Tecumseh Nat. Bank v. McGee, 61 Neb. 709, 85 N. W. 949; Wis. Laws 1907, chap. 197; McNaughton's Will, 138 Wis. 179, 118 N. W. 997, 120 N. W. 288; 7 Thomp. Corp. § 8460; Fearing v. Glenn, 19 C. C. A. 388, 38 U. S. App. 424, 73 Fed. 116; 3 How. Anno. Stat. § 7545; Brennan v. Michigan C. R. Co. 93 Mich. 156, 53 N. W. 358; Wallace v. Fraternal Mystic Circle, 121 Mich. 263, 80 N. W. 7; Krause v. Equitable Life Assur. Soc. 105 Mich. 329, 63 N. W. 440.

As a general rule, a trustee will not be allowed to acquire an interest adverse to the trust, and when he purchases in his own name an outstanding title, encumbrance, or other interest in the trust property, such purchase will be held to inure to the benefit of the *cestui que trust.* Berry v. Evendon, 14 N. D. 1, 103 N. W. 748; Patterson Land Co. v. Lynn, 27 N. D. 391, 147 N. W. 256; Krause v. Krause, 30 N. D. 54, 151 N. W. 991; Gates v. Kelley, 15 N. D. 639, 110 N. W. 770; McCormick v. Ocean City Asso. — N. J. Eq. —, 18 Atl. 112; Vulcan Detinning Co. v. American Can Co. 72 N. J. Eq. 387, 12 L.R.A.(N.S.) 111, 67 Atl. 339; Sorenson v. Davis, 83 Iowa, 405, 49 N. W. 1004; Fulton v. Whitney, 66 N. Y. 548; Deegan v. Capner, 44 N. J. Eq. 339, 15 Atl. 819.

Outside of proper compensation and expenses, any advantage gained by a trustee, either by performing his duty or by betraying his trust, inures to the benefit of the beneficiary or principal, while such trust relation exists. Dodd v. Wakeman, 26 N. J. Eq. 484; Lafferty v. Jelley, 22 Ind. 471; Moinett v. Days, 1 Baxt. 431; Nebraska Power Co. v. Koenig, 93 Neb. 68, 139 N. W. 839; Sawyer v. Issenhuth, 31 S. D. 502, 141 N. W. 378; First Nat. Bank v. State Bank, 15 N. D. 594, 109 N. W. 61; Holridge v. Gillespie, 2 Johns. Ch. 33; Marshall v. Thompson, 39 Minn. 137, 39 N. W. 309; 2 Perry, Tr. § 864 and cases cited; Philippi v. Philippe, 115 U. S. 151, 29 L. ed. 336, 5 Sup. Ct. Rep. 1181, and cases cited; Wadsworth v. Adams, 138 U. S. 389, 34 L. ed. 987, 11 Sup. Ct. Rep. 303; Holterhoff v. Mead, 36 Minn. 45, 29 N. W. 675; Holt v. Wilson, 75 Ala. 64; Maul v. Rider, 59 Pa. 171.

Appellants were not obliged to examine the records to ascertain if deeds had been recorded. The record of deeds was not even constructive notice to the *cestui que trust.* Duxbury v. Boice, 70 Minn. 119, 72 N. W. 838; Bailey v. Galpin, 40 Minn. 324, 41 N. W. 1054; Berkey v. Judd, 22 Minn. 299; McCarthy v. McCarthy, 74 Ala. 555; 20 Am. & Eng. Enc. Law, 596.

A *cestui que trust* may convey to the trustee his interest in the trust estate, but he must know that he is doing so. His title cannot be obtained by mistake or by any trick. Yonge v. Hooper, 73 Ala. 119; Pearce v. Gamble, 72 Ala. 341; Johnson v. Johnson, 5 Ala. 90; Chalmer v. Bradley, 1 Jac. & W. 51, 37 Eng. Reprint, 294, 20 Revised Rep. 216; Smith v. Townshend, 27 Md. 388, 92 Am. Dec. 637; Cumberland

Coal & I. Co. v. Sherman, 20 Md. 117; Irwin v. Longworth, 20 Ohio, 581; King v. Remington, 36 Minn. 15, 29 N. W. 352; Berry v. Evendon, 14 N. D. 1, 103 N. W. 748; Perry, Tr. §§ 8, 129, 179, 184, 204, 209, 210; Dobson v. Racey, 3 Sandf. Ch. 61.

The modern rule is that no one occupying a position of confidence to the ultimate owner of the property, whether the relation be that of trustee and *cestui que trust,* attorney and client, principal and agent, guardian and ward, or even friend and adviser, can, during such relationship, become in any way the absolute owner of the property, as against the other party to such relationship. Van Epps v. Van Epps, 9 Paige, 238; 1 Perry, Tr. § 433; King v. Remington, 36 Minn. 15, 29 N. W. 352; Berry v. Evendon, 14 N. D. 1, 103 N. W. 748; Patterson Land Co. v. Lynn, 27 N. D. 391, 147 N. W. 256; 7 Mod. Am. Law, 279; Davoue v. Fanning, 2 Johns. Ch. 262; Munro v. Allaire, 2 Cai. Cas. 183, 2 Am. Dec. 330; Rogers v. Rogers, Hopk. Ch. 526; Hubbell v. Medbury, 53 N. Y. 98; Case v. Carroll, 35 N. Y. 388; Baldwin v. Allison, 4 Minn. 25, Gil. 11; Jewett v. Miller, 10 N. Y. 402, 61 Am. Dec. 751; Fox v. Mackreth, 2 Cox, Ch. Cas. 320, 30 Eng. Reprint, 148, 2 Bro. Ch. 400, 29 Eng. Reprint, 224; Re Taylor Orphan Asylum, 36 Wis. 552; Cook v. Berlin Woolen Mill Co. 43 Wis. 433; Gillett v. Gillett, 9 Wis. 194.

The legal rate of interest was 7 per cent. S. D. Rev. Civ. Code 1903, §§ 1416, 1421; Hovey v. Edmison, 3 Dak. 449, 22 N. W. 594; Goodale v. Wallace, 19 S. D. 405, 117 Am. St. Rep. 962, 103 N. W. 651, 9 Ann. Cas. 545; Hinrichs v. Brady, 23 S. D. 250, 121 N. W. 777.

Absence from the state tolls the statute of limitations and prevents it commencing to run against the bringing of an action against such absent defendant. Colonial & U. S. Mortg. Co. v. Northwest Thresher Co. 14 N. D. 147, 70 L.R.A. 814, 116 Am. St. Rep. 642, 103 N. W. 915, 8 Ann. Cas. 1160; Colonial & U. S. Mortg. Co. v. Flemington, 14 N. D. 181, 116 Am. St. Rep. 670, 103 N. W. 929; Paine v. Dodds, 14 N. D. 189, 116 Am. St. Rep. 674, 103 N. W. 931; Code Civ. Proc. Rev. Codes 1905, § 6827, Comp. Laws 1913, § 7415; Proctor v. Proctor, 215 Ill. 275, 69 L.R.A. 673, 106 Am. St. Rep. 168, 74 N. E. 145, 2 Ann. Cas. 819; Fall v. Eastin, 215 U. S. 1, 54 L. ed. 65, 30 Sup. Ct. Rep. 3, 17 Ann. Cas. 853, 23 L.R.A.(N.S.) 924; Bommer v. American Spiral Spring Butt Hinge Mfg. Co. 12 Jones & S. 454.

Foreign statutes must be pleaded. The statute of limitations is a defense that must be specifically pleaded. 31 Cyc. title, Pleading, 47..

A limitation statute begins to run from the time the cause of action accrues, unless tolled by some circumstance provided by statute. Wilson v. Shocklee, 92 Ark. 370, 123 S. W. 403.

In the absence of statutory provision, a judgment rendered against a corporation after its dissolution is absolutely void, the same as a judgment against a natural person after his death, and is therefore subject to collateral attack. 2 Clark & M. Priv. Corp. § 329; Greely v. Smith, 3. Story, 657, Fed. Cas. No. 5,748; Mumma v. Potomac Co. 8 Pet. 286,. 8 L. ed. 947; Root v. Sweeney, 12 S. D. 43, 80 N. W. 149; Pendleton v. Russell, 144 U. S. 645, 36 L. ed. 576, 12 Sup. Ct. Rep. 743; Murphy v. Missouri & K. Land & Loan Co. 28 N. D. 519, 149 N. W. 957; Insurance Comr. v. United F. Ins. Co. 22 R. I. 377, 48 Atl. 202.

*Pollock & Pollock,* for respondents.

A lien upon, or encumbrance, or an interest in real estate, does not constitute real estate. Such interests are mere chattels real. Tax-sale certificates are liens only until the period of redemption has expired, and the holders have only an interest in real estate. Cruser v. Williams, 13 N. D. 284, 100 N. W. 721; Darling v. Purcell, 13 N. D. 288, 100 N. W. 726; Comp. Laws 1913, §§ 7309, 10369.

"A land certificate, while it symbolizes the right to acquire land, is in itself personal property." 32 Cyc. 668; Collins v. Durward, 4 Tex. Civ. App. 339, 23 S. W. 561; Barker v. Swenson, 66 Tex. 407, 1 S. W. 117; Groesbeck v. Bodman, 73 Tex. 287, 11 S. W. 322; Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338; Winterberg v. Van Devorste, 19 N. D. 417, 122 N. W. 866; Clapp v. Tower, 11 N. D. 556, 93 N. W. 862; Comp. Laws 1913, § 6774; Berry v. Evendon, 14 N. D. 1, 103 N. W. 748; Cruser v. Williams and Darling v. Purcell, supra.

An express trust cannot be created by parol. Comp. Laws 1913, § 5365; Carter v. Carter, 14 N. D. 66, 103 N. W. 425; Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088.

Statements of a party as to what he was promised, before he signed a written instrument, are not admissible to change or qualify the instrument itself. Rutherford v. Massachusetts Mut. L. Ins. Co. 45 Fed. 712; Eighmie v. Taylor, 98 N. Y. 288; Deposition of Jimella S. Wiest, p. 22; Lance v. Bonnell, 58 N. J. Eq. 259, 43 Atl. 288.

A party to an action against legal representatives of a deceased person cannot testify, either to the transaction itself, or to circumstances surrounding the transaction. Regan v. Jones, 14 N. D. 591, 105 N. W. 613; Larson v. Newman, 19 N. D. 153, 23 L.R.A.(N.S.) 849, 121 N. W. 202; Peterson v. Merchants' Elevator Co. 27 L.R.A.(N.S.) 816, note; Tecumseh Nat. Bank v. McGee, 61 Neb. 709, 85 N. W. 949.

The rule that lapse of time will never bar the enforcement of an express trust is applicable to those cases where there has been no repudiation of the trust, or where the beneficiaries have no reasonable ground to believe that the trust has been or will be denied. Wood v. Carpenter, 101 U. S. 135, 141, 25 L. ed. 807, 809; Oliver v. Piatt, 3 How. 333, 411, 11 L. ed. 622, 657; Hunt v. Patchin, 13 Sawy. 304, 35 Fed. 816; Miles v. Thorne, 38 Cal. 335, 99 Am. Dec. 391.

Even though it be conceded that the pledgeor-pledgee relation still exists, they have failed to do equity and are therefore barred to demand equity. Tracy v. Wheeler, 15 N. D. 248, 6 L.R.A.(N.S.) 516, 107 N. W. 68; Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338.

The recitals in a deed as to consideration are not conclusive, but the true and actual consideration may be shown by proof *aliunde*. Fraley v. Bentley, 1 Dak. 25, 46 N. W. 506; Alsterberg v. Bennett, 14 N. D. 596, 106 N. W. 49; Smith v. Gaub, 19 N. D. 337, 123 N. W. 827.

An action barred by the statute of a foreign state is barred here. New York Code Civ. Proc. chap. 4, § 388; Roberts v. Sykes, 30 Barb. 173; 18 Am. & Eng. Enc. Law, 724; Rathbone v. Coe, 6 Dak. 91, 50 N. W. 620; Allen v. Allen, 95 Cal. 184, 16 L.R.A. 646, 30 Pac. 213.

One seeking to redeem from the mortgagee in possession, which is clearly analogous to a pledgee in possession, without paying the debt, does not come into equity with clean hands. Tracy v. Wheeler, 15 N. D. 248, 6 L.R.A.(N.S.) 516, 107 N. W. 68; Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338; Norton v. Baxter, 41 Minn. 146, 4 L.R.A. 305, 16 Am. St. Rep. 679, 42 N. W. 865; Tuthill v. Morris, 81 N. Y. 94; Larsen v. Breene, 12 Colo. 480, 21 Pac. 498; Talty v. Freedman's Sav. & T. Co. 93 U. S. 321, 23 L. ed. 886.

And an offer to pay is not equivalent to a tender. Cumnock v. Newburyport Inst. for Sav. 142 Mass. 342, 56 Am. Rep. 679, 7 N. E. 869; Tuthill v. Morris, 81 N. Y. 94.

Actions of this nature are prosecuted in this state under a special

statute which provides the practice fully.   Comp. Laws 1913, §§ 8144, 8165.

"Any defendant in default for want of an answer, or not appearing at the trial, shall be adjudged to have no estate or interest in, or lien or encumbrance upon, the property."   Comp. Laws 1913, § 8153.

These parties were in default; a judgment was rendered; there has been a judicial determination; and an estoppel arises by force of and resides in the judgment so rendered.   Southern P. R. Co. v. United States, 168 U. S. 1, 42 L. ed. 355, 18 Sup. Ct. Rep. 18; 23 Cyc. 1218.

It matters not that the judgment was obtained against a corporation after it had been dissolved; the action was brought for the benefit of these plaintiffs, and if a mistake was made, they cannot now complain. They had their remedy.   Murphy v. Missouri & K. Land & Loan Co. 28 N. D. 519, 149 N. W. 957; 23 Cyc. 1245, ¶ 3; Tarleton v. Johnson, 25 Ala. 300, 60 Am. Dec. 515; Cheney v. Patton, 144 Ill. 373, 34 N. E. 416; Southern P. R. Co. v. United States, 168 U. S. 1, 48, 42 L. ed. 355, 377, 18 Sup. Ct. Rep. 18; Norton v. House of Mercy, 41 C. C. A. ·396, 101 Fed. 382.

CHRISTIANSON, J.   The controversy involved in this action grew out of the following undisputed facts: In 1888 the Union Banking Company was organized as a private corporation under the laws of the then territory of Dakota, its principal place of business being at the city of Aberdeen.   Upon the subsequent division of the territory of Dakota, its corporate existence continued under the laws of the state of South Dakota.   The corporation, among other things, was engaged in the business of loaning money and buying and selling securities.   Between the 25th day of November, 1890, and the 1st day of July, 1891, one J. A. Paine loaned to the said Union Banking Company four several sums of money, amounting in the aggregate to $5,600.   The Union Banking Company issued to said Paine for each of said several sums a certificate of deposit payable in five years from the date thereof, with semiannual interest at the rate of 10 per cent per annum.   As collateral security for the payment of such certificates of deposit the Union Banking Company delivered to said J. A. Paine certain tax-sale certificates equal in face amount to the amount of said certificates of deposit.   Said tax-sale certificates were unassigned and remained in the name of the

Union Banking Company. With each of said certificates of deposit the parties made an agreement in writing, signed by them, agreeing, among other things, that, in case of default in payment of principal or interest of said certificate of deposit for a period of sixty days after the maturity thereof, said J. A. Paine might collect or sell the securities and apply the proceeds to the redemption of said certificate of deposit and interest, and further providing that in case said Union Banking Company should elect at any time during the life of said agreement, it might recall any particular certificate so deposited with said Paine, first having deposited to replace the same a bond and mortgage or tax-sale certificate of like amount and based upon equally good security.

The various tax certificates (so far as this action is concerned) covered certain lands in Dickey, McIntosh, Nelson, and LaMoure counties in this state, and were based upon tax sales held in such counties in the years 1890 and 1891. The Union Banking Company became financially embarrassed, and reached a point where it was unable to meet and consequently defaulted in the interest payments upon all the certificates of deposit held by Paine; it was unable to perform its part of the contracts accompanying the certificates of deposit for the reason that it had no tax certificates to substitute for or replace any tax certificate which it might desire to recall, and it was without funds with which to make purchases of tax-sale certificates. This condition existed on July 6th, 1893, at which time the said Union Banking Company, by its president, S. H. Cranmer, the first-named plaintiff in this action, made, executed, and delivered to said J. A. Paine an absolute assignment of each of the said several tax-sale certificates theretofore delivered to him as collateral security, as aforesaid. At all times subsequent to the making and delivering of such full and complete assignment, the said J. A. Paine made collections of the amounts which were paid for redemption of such tax-sale certificates as the same were redeemed, and retained the moneys so collected and the title to the real estate so procured, as his own; procured the issuance to himself of tax deeds for such lands as were not redeemed, and fortified such tax titles by purchase of subsequent tax certificates and the procuration of tax deeds thereon; contested the claims of numerous and divers persons with reference to such titles, and defended suits brought to set aside tax titles so procured as

aforesaid, various features of such litigation having from time to time been appealed to this court (see Paine v. Dickey County, 8 N. D. 581, 80 N. W. 770; Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Paine v. Dodds, 14 N. D. 189, 116 Am. St. Rep. 674, 103 N. W. 931; Beggs v. Paine, 15 N. D. 436, 109 N. W. 322), and treated the said moneys and lands as his own at all times subsequent to the time of making said absolute assignments, July 6th, 1893, until the time of his death, which occurred on July 24th, 1912.

The Union Banking Company made no payments, either for principal or interest, upon any of the certificates of deposit held by Paine at any time after July 6th, 1893; nor did the plaintiffs in this action make any tender or offer of payment of the indebtedness represented by such certificates of deposit prior to the commencement of this action. The Union Banking Company made no claim against Paine or against the administrator of his estate until in March, 1914, at which time it brought an action to determine adverse claims to the lands involved in this suit and certain other lands. S. H. Cranmer, the first-named plaintiff in this case, appeared as one of the attorneys of record for the Union Banking Company in such action and personally verified the complaint therein. The action to determine adverse claims came on for trial in September, 1914, and resulted in a judgment in favor of the defendants on account of the plaintiff therein defaulting.

The charter of the Union Banking Company expired on April 2, 1908, and the plaintiffs, who were the directors of said corporation at the time of the expiration of its corporate existence, bring this new action as trustees by operation of law of said corporation, and assert that they, as such trustees, are the owners and entitled to possession of certain lands in Dickey, McIntosh, Nelson, and LaMoure counties in this state, by reason of the fact that Paine obtained tax deeds for said tracts upon some of the tax certificates which he received from the Union Banking Company. The defendants asserted several defenses, among others, the statute of limitations, former adjudication, and laches.

The trial court made findings of fact and conclusions of law in favor of the defendants which may be epitomized as follows:

That the plaintiffs have failed to establish a cause of action against the defendants, or any of them.

That the several assignments of the tax-sale certificates executed and delivered by the Union Banking Company on or about July 6th, 1893, were absolute and unconditional, and transferred to said Paine all the right, title, and interest of said Union Banking Company in and to said tax-sale certificates.

That plaintiffs' cause of action, if any they had, was barred by the statute of limitations.

That the Union Banking Company had prosecuted a prior action against the defendants to quiet title to the several tracts involved in this action, wherein a final judgment was entered in favor of the defendants, and that such judgment is a bar to this action.

That plaintiffs have failed to show payment or tender to said Paine or his representative, of the moneys represented by the certificates of deposit, and that payment or tender of such indebtedness is a necessary pre-requisite to the maintenance of plaintiffs' action.

That plaintiffs have been guilty of gross laches, and that any cause of action which they might have had is barred and plaintiffs are estopped to assert any right, title, or interest in the real estate involved herein.

Plaintiffs have appealed and demanded a trial *de novo* in this court.

The trial court, among other things, found that the Union Banking Company practically terminated and went out of active business in or about the year 1893, and has not since been engaged in business, and that since that time its correspondence, papers, and records have in the main been scattered, lost, and destroyed, and have not been preserved, and that it is not made to appear that any special care for the preservation thereof has been taken by the plaintiffs. The plaintiffs complain of this finding and point to the testimony of S. H. Cranmer, the former president of the Union Banking Company, wherein he stated that he continued to reside in Aberdeen, South Dakota, until 1908, and that stockholders' meetings for the election of directors were held during the various years, and that the last meeting of stockholders for the election of directors was held in June, 1907, at which time the plaintiffs were elected directors. The directors were all relatives of S. H. Cranmer. The plaintiff F. W. Cranmer being his daughter; E. A. Cranmer being his wife; L. E. Powers, his brother-in-law, and James H. Wells, his wife's brother-in-law,—the latter two being residents of Iowa.

Upon the trial plaintiffs offered the oral testimony of S. H. Cranmer,

and the deposition of one Jimella S. Wiest, who was a bookkeeper and probably assistant cashier of the Union Banking Company at the time the transactions in question were had with Mr. Paine. The purpose of this testimony was to show that the assignments of the tax certificates made on July 6th, 1893, were not intended to be absolute, or to transfer the ownership of the tax certificates to Mr. Paine, but that such assignments were made merely for the purpose of enabling Mr. Paine to obtain the redemption moneys paid to the various county treasurers, and that it was the intent of the parties that such certificates should remain the property of the Union Banking Company, and that therefore Mr. Paine merely held the same as collateral security for the payment of the certificates of deposit. Mrs. Wiest testified that she severed her connections with the Union Banking Company in the fall of 1894 or the spring of 1895, and since that time has had absolutely no connection with the company. It is shown by the testimony of Mrs. Wiest that the arrangement with Mr. Paine was made wholly through correspondence. Plaintiffs failed to produce such correspondence and sought to establish the contents thereof by Mrs. Wiest. As a foundation for such secondary evidence, Mr. Cranmer testified that he left Aberdeen in 1908, and was gone for some time; that before going away he placed such correspondence with the records and books of the corporation in an attic in his residence, and that on his return, he found the correspondence and same of the records missing. The defendants objected to all such evidence on various grounds, among others, on the ground that the same related to a transaction with a deceased person and hence was inadmissible under the provisions of § 7871, Comp. Laws 1913, we do not deem it necessary to pass upon the admissibility of this testimony. Neither do we find it necessary to discuss any of the other questions of law argued by appellants' counsel.

Concededly plaintiffs had the burden of proof, and were required to establish their cause of action by competent evidence. The trial court held that they had failed to do this, and in this conclusion we concur. Under the laws of this state it is presumed that a thing delivered by one to another was due to the latter; that a person owns the things which are possessed by him; and that a person who exercises acts of ownership over property is its owner. Comp. Laws, § 7936, subdivs. 8, 11, 12. It is also presumed that private transactions have

been fair and regular; that the ordinary course of business has been followed, and that a person takes ordinary care of his own concern. Comp. Laws, § 7936, subdivs. 19, 20, and 24.

The plaintiff, S. H. Cranmer, was the president and principal stockholder of the corporation. He was the directing spirit and most vitally interested in the safeguarding of any property belonging to the corporation. The directors, as already stated, were his near relatives. He was a banker and a lawyer. The books offered in evidence show that records were kept of the various tax certificates purchased by the company, and that the corporation purchased large numbers of tax certificates in various counties in the territory of Dakota and in the states of North and South Dakota. S. H. Cranmer, the president and managing officer of the corporation, knew that, under the laws of North Dakota, tax certificates issued on any subsequent tax sales would cut off all rights under the tax certificates assigned by the corporation to Paine. He knew that unless the lands covered by such tax certificates were redeemed within two years from the dates of the respective tax sales, the holders of such tax certificates might apply and receive tax deeds for the lands described in the certificates. Comp. Laws 1887, § 1638; Rev. Codes 1895, § 1267. He also knew that, under the laws of North Dakota, the tax certificates assigned to Paine would be extinguished and become null and void unless the holder thereof took possession of the premises or obtained tax deeds on such certificates on or before July 1st, 1906. Comp. Laws, 1913, § 2199.

Cranmer, the lawyer, familiar with the tax-title business, says that his corporation owned the tax certificates assigned to Paine, and yet, if his testimony is true, the Union Banking Company continued a going concern until 1907, with Cranmer, the president, in charge of its books, records, and correspondence at Aberdeen, South Dakota. We then have a condition where Cranmer, in charge of the affairs of the Union Banking Company for a period of about thirteen years, permitted Mr. Paine to retain the property of the Union Banking Company and treat it as his own. It is conceded that the Union Banking Company neither received nor requested any report from Paine, nor did it have any communication with him of any kind since 1894. Appellants' counsel assert that the officers of the Union Banking Company were under no legal obligation to make inquiry of Paine. We do not care to discuss the

proposition. Because, conceding that no legal duty rested upon the plaintiffs to make inquiry from Paine, the fact still remains that their conduct must be considered in determining the ownership of the tax certificates. Is it reasonable to believe that if these certificates did in fact remain the property of the Union Banking Company, that S. H. Cranmer, the lawyer and tax-title broker, would have permitted Paine, the New York minister, to retain these valuable properties for this long period of time without even an inquiry as to their status? Was Cranmer's conduct that of a man believing himself the owner of these certificates? The answer seems obvious.

In the meantime Paine (who, according to the records offered in evidence, was a minister residing at Tarrytown, New York) was not only exercising the right of ownership over the tax certificates, but he was vigorously asserting or defending such rights in the different courts of this state, as evidenced by the reported decisions of this court. The conduct of Paine was that of a man asserting or defending his own property rights, and is consistent only with the theory that he believed himself to be the owner of the tax certificates. The conduct of Cranmer was not that of a man who believed himself to be the owner of valuable property rights possessed by another. If claims such as presented by the plaintiffs in this case could be deemed established by evidence of the nature here presented, when viewed in the light of the conduct of the principal plaintiff, the administration of justice would indeed be a mockery, and estates of decedents become the easy prey of ingenious and unscrupulous claimants.

The judgment appealed from is affirmed.

On Petition for Rehearing (filed June 13, 1916).

A petition for rehearing has been filed herein, wherein, among other things, it is asserted that, in our former opinion, we erroneously assumed that the Union Banking Company was financially embarrassed and unable to perform its contract with Paine at the time it assigned to him the tax certificates involved herein on July 6, 1893. Plaintiffs' principal witness was Jimella S. Wiest, the stenographer and bookkeeper of the Union Banking Company, and in her testimony she states, among other things: "As I remember, we wrote and told him (Paine)

34 N. D.—24.

that we were short of funds and would not be able to get money from eastern investors with which to buy new tax-sale certificates. . . ." She also testified: "We had no ready cash to buy new certificates to replace those in his hands. . . ."

Mrs. Wiest's testimony relates to, and purports to describe, the conditions existing immediately prior to and on July 6, 1893. As stated in our former opinion, the Union Banking Company had been unable to pay certain interest instalments then past due upon the certificates of deposit held by Paine. Such interest instalments aggregated in all $280. An examination of the records of the Union Banking Company, offered in evidence, shows that no new transactions were entered into by this company subsequent to July 6, 1893. The various gold bonds and certificates of deposit shown upon the books of the company were all issued at prior dates. Its record of tax certificates purchased in the various counties in North and South Dakota shows that all tax-sale certificates were purchased prior to that time. In fact, the evidence convinces us that the trial court very properly found "that the said Union Banking Company practically terminated and went out of active business in or about the year 1893, and has not since engaged in business."

The petition for rehearing also asserts that in our former opinion we overlooked the fact that, at the time the assignments were made, several of the tax certificates so assigned had already been redeemed, and that the redemption moneys which had been paid in to redeem such tax-sale certificates, and then in the hands of the several county treasurers, amounted in all to exceed the sum of $1,900. In our former decision we recited certain undisputed and controlling facts, which, in our opinion, justified the trial court in finding that the plaintiffs had failed to establish a cause of action by sufficient competent proof. While the facts recited in our former decision, in our opinion, justified the trial court's finding and were sufficient by themselves to require an affirmance of the judgment rendered by the court below, still, in arriving at our former decision, due consideration was given to all the evidence offered by plaintiffs and to every fact and circumstance developed or sought to be established by such evidence, including the evidence offered by plaintiffs relative to the matter under consideration. We are, however, wholly unable to understand how the fact that a number

of the tax certificates had actually been redeemed at the time the assignments were executed and delivered to Paine can possibly aid the plaintiffs. The plaintiffs base their cause of action primarily upon the proposition that the assignments of tax certificates executed to Paine on July 6, 1893, while absolute on their face, and pretending to vest absolute title in Paine, were, as a matter of fact, not intended to constitute absolute assignments, but that such assignments were made solely for the purpose of enabling Paine to obtain the redemption moneys from the county treasurers direct, as the certificates might be redeemed.

The evidence shows that Paine held certificates of deposit aggregating in all $5,600: $3,000 of which was payable November 25, 1895; $600 payable January 1, 1896; and $2,000 payable July 1, 1896. The Union Banking Company, on July 6, 1893, was indebted to Paine for past-due interest instalments on such certificates of deposit in an amount aggregating in all $280. This was the only sum it was required to pay at that time. It is a matter of common knowledge that in July, 1893, and for some time prior, as well as subsequent, thereto, this country was in the midst of a financial panic. Money was difficult to obtain. Investments and securities of all kinds could be purchased at the lowest imaginable prices. The Union Banking Company was in financial straits. Yet it is contended that at this time it knowingly and intentionally assigned to Paine over $1,900 in cash then in the hands of the different county treasurers as collateral security for certain certificates of deposit. In our opinion this evidence, instead of supporting plaintiffs' claim, rather tends to establish the fact that the assignments made by the Union Banking Company to Paine on July 6, 1893, were absolute, and intended to transfer to Paine the absolute title to such tax certificates and all moneys or properties which might be derived therefrom or acquired thereby.

As stated in our former opinion, the plaintiffs in this action assert that they, as trustees of the Union Banking Company, a dissolved corporation, are the owners and entitled to possession of the lands described in the complaint. They were required to establish this fact by satisfactory, competent evidence. The evidence shows that Paine never was in Aberdeen, South Dakota, in connection with the business dealings between himself and the Union Banking Company, but that such business transactions were carried on exclusively by correspondence.

Plaintiffs sought to prove the contents of such correspondence by the testimony of Mrs. Wiest, the stenographer and bookkeeper of the Union Banking Company. As stated in our former opinion she severed her connection with the company in the fall of 1894 or the spring of 1895, and since that time she has had absolutely nothing to do with the company or its affairs. She has subsequently married and resided in Minnesota and Oregon, and is at the present time a resident of British Columbia. Her deposition was taken in Seattle in August, 1915, or more than twenty-two years after the correspondence between the Union Banking Company and Paine was had. The plaintiff, S. H. Cranmer, appeared as attorney for the plaintiffs at the time of the taking of the deposition and personally conducted her examination. As stated in our former opinion, the correspondence between Paine and the Union Banking Company was not produced, and, so far as the record shows, Mrs. Wiest had no notes or memoranda, stenographic or otherwise, from which to refresh her memory so far as the contents of the correspondence is concerned, but she pretends to testify thereto solely from memory.

Assuming (but not deciding) that this testimony is admissible, it by no means convinces us that plaintiffs, as trustees of the Union Banking Company, are owners of the lands involved in this litigation. When all the evidence adduced by the plaintiffs is considered in light of the undisputed facts and circumstances in the case, we are led to the irresistible conclusion that plaintiffs have failed to establish any right to recover. The former decision will stand.

A rehearing is denied.